In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-2145

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

BYRON BLAKE,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:06-CR-30146-NJR-1 — **Nancy J. Rosenstengel**, *Chief Judge*.

———————————

ARGUED NOVEMBER 16, 2021 — DECIDED JANUARY 4, 2022

———————————

Before BRENNAN, SCUDDER, and JACKSON-AKIWUMI, *Circuit Judges*.

PER CURIAM. Byron Blake appeals the denial of his motion under Section 404(b) of the First Step Act of 2018 to reduce his 420-month sentence for conspiracy to distribute crack cocaine. In denying Blake's motion, the district court sidestepped the parties' dispute about the quantity of drugs attributable to Blake for sentencing purposes and thus never calculated the retroactively lowered range under the Sentencing Guidelines.

At the time, the court did not have the benefit of our decision in *United States v. Corner*, 967 F.3d 662 (7th Cir. 2020), which held that a district court commits reversible procedural error by making a discretionary decision on a First Step Act motion without determining the new sentencing parameters first. We therefore vacate the judgment and remand for reconsideration of Blake's motion.

## Background

In 2007, a jury found Blake guilty of conspiracy to distribute and to possess with intent to distribute crack, and distribution of crack and powder cocaine. *See* 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1). Based on the testimony of Blake's codefendant, Ryan Ivory, the presentence investigation report (PSR) determined that, for purposes of setting his base offense level under U.S.S.G. § 2D1.1, over 13 kilograms of crack could be attributed to Blake as relevant conduct under U.S.S.G. § 1B1.3. (Ivory, meanwhile, had entered a plea agreement with the government that contained a stipulation that the conspiracy distributed no more than 500 grams of crack.) With other adjustments, Blake's PSR calculated a range of life imprisonment for the crack offense and an effective range of 360 months (the statutory maximum) for the powder cocaine offense.

The district court (at the time, Chief Judge G. Patrick Murphy) adopted the PSR's drug-quantity findings but imposed a below-guideline sentence of 420 months for the crack conviction. The court reasoned that a life sentence was greater than necessary to serve the goals of sentencing. For the cocaine count, the court sentenced Blake to a concurrent term of 360 months.

On direct appeal, we upheld Blake's sentence but noted an error in the finding that Blake was responsible for 13 kilograms of crack. *See United States v. Blake*, 286 F. App'x 337, 338–40 (7th Cir. 2008). The probation officer who prepared the PSR had misinterpreted Ivory's testimony and therefore overestimated the quantity, and the district court adopted the figure. *Id.* We did not accept Blake's contention that the district court had to cap the amount at what was actually seized. *Id.* at 340. But we explained that the district court should have interpreted the (sometimes inconsistent) evidence and selected a reasonable drug quantity. *Id.* Nevertheless, its failure to do so was harmless: Any amount over 1.5 kilograms would have resulted in the same base offense level, and "[s]uch an estimate [was] reasonable" based on the evidence. *Id.*

In 2019, Blake moved for a sentence reduction under Section 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194. That statute made retroactive certain reduced penalties enacted by the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, for offenses involving crack cocaine.

The parties agreed that Blake was eligible for a reduction because the crack-distribution conspiracy was a "covered offense" but, because of a dispute about the drug quantity attributable to him, they disagreed about what his modified guideline range would be. According to Blake, the error in the original sentencing court's drug-quantity calculation was no longer insignificant because the quantities triggering higher offense levels are larger now. He argued for a drug quantity of 1.5 kilograms—the amount we had suggested was a "reasonable" minimum estimate—which would result in a guideline range of 292–365 months. The government responded that 1.5 kilograms was simply the threshold for the offense

level at the time and does not account for Blake's relevant conduct, such as the PSR's findings that Blake sold crack to nine distributors outside of the charged conspiracy. It urged the court to stick with the original figure of 13 kilograms, which would result in a range of 360 months to life.

The district court (now Chief Judge Rosenstengel) decided not to resolve the drug-quantity dispute. It noted the different guideline ranges that could result from the proposed drug quantities, but it explained: "[E]ven if the Court were to ignore [Blake's] history and the sentencing District Judge's wisdom to dig deeper into the cocaine base convictions for resentencing, the determination of drug quantities … is difficult to resolve." Both the 1.5- and 13-kilogram figures were flawed, the court continued, but it would not be "sensible" to "step into the mire of drug quantities." The court therefore proceeded directly to assessing whether, as a matter of its discretion, Blake deserved a reduced sentence.

On that topic, the court commended Blake for his record during his incarceration, noting that he had completed almost 500 hours of educational programming, become a minister, and maintained an unblemished disciplinary record during 12 years in custody. But it concluded that relief was nevertheless unwarranted because of aggravating factors from the time of his original sentencing: his role as a leader in a long-lasting drug network; evidence that he threatened multiple witnesses; and his violent criminal history, including a conviction when he was a juvenile for aggravated criminal sexual abuse of a minor.

Blake appealed, and after the court addressed his lawyer's motion to withdraw, *see United States v. Blake*, 986 F.3d 756,

758 (7th Cir. 2021), and he obtained new appellate counsel, the parties proceeded to brief the merits.

## Analysis

On appeal, Blake relies on our decision in *United States v. Corner*, 967 F.3d 662 (7th Cir. 2020), to argue that the district court erred by ruling on his motion without first determining what new penalties apply. Because the asserted error is procedural, our review is de novo. *United States v. Fowowe*, 1 F.4th 522, 526 (7th Cir. 2021). We agree with Blake that, under *Corner*, the district court erred in bypassing the drug-quantity dispute that would determine the new sentencing range.

In *Corner*, we set forth the "baseline of process" required when courts consider sentence-reduction motions under the First Step Act. 967 F.3d at 665. Although courts are never obligated to grant such motions, their discretion "must be informed by a calculation of the new sentencing parameters" and an accurate comparison between the original and new options. *Id.* A decision based "on erroneous or expired guideline calculation, or a decision to decline resentencing without considering at all the guidelines, would seemingly run afoul of Congressional expectations." *Id.* (cleaned up).

The district court's pre-*Corner* decision to avoid the drug-quantity dispute was understandable, but Blake did not receive the process that the First Step Act requires. The court did not address the changes to the statutory penalty for Blake's offense, which was reduced from a range of 20 years–life to 10 years–life. More importantly—because any possible floor in the guideline range is well over the new statutory minimum of 10 years—the court did not determine the applicable guideline range, which depends in part on the drug

quantity. Thus, the court's exercise of discretion was "divorced from the concerns underlying the Fair Sentencing Act," specifically, "redress[ing] the extreme inequity between sentences for crack and powder cocaine offenses deemed irrational and unfair by Congress." *Corner*, 967 F.3d at 666.

Indeed, the district court's remark about its hesitance to question "the sentencing District Judge's wisdom" suggests that it deferred to a decision that adhered to a sentencing scheme that Congress has since renounced *and* that relied on a drug quantity that we found unsupportable. *See United States v. Shaw*, 957 F.3d 734, 741 (7th Cir. 2020) (noting that judges taking over First Step Act cases may be "hamper[ed]" by relying on a sentencing judge's explanation "not created with the current statutory framework in mind"). Further, at the time of the original sentencing, Blake's 420-month sentence was below the guideline range, but today, it would be a mid-range or above-range sentence, depending on the drug quantity. So, compared to today's offenders, Blake is on the most culpable end of the spectrum, though his original sentence placed him on the lowest end. Even if the district court was trying to effectuate the sentencing judge's intent, then, that might not have occurred: It blessed an upward shift in the sentence (in effect), though the only aggravating factors existed at Blake's original sentencing, and Blake, by all accounts, has been a model inmate throughout over a decade of incarceration. *See Corner*, 967 F.3d at 666 (court abused its discretion by relying upon reasoning for original sentence without explaining why sentence was still appropriate).

The government argues that the court did not procedurally err, but none of its reasons is persuasive. First, the government argues that the court's consideration of "the full

spectrum" of possible guideline ranges before denying the motion was sufficient because the calculations were "tricky and disputed." The government maintains that we "endorsed" this approach in *Corner* by saying, "[W]e encourage district courts to exercise discretion under [18 U.S.C.] § 3553(a) rather than impose a guidelines sentence when faced with a tricky and disputed guidelines calculation." 967 F.3d at 666.

The government misreads *Corner*. It does not say that, when faced with a difficult guideline calculation, sentencing courts can skip calculating the range and proceed to a decision based on the § 3553(a) factors. Rather, *Corner* extends our decisions advising sentencing judges to state whether their resolution of a difficult and disputed guideline question matters to the bottom line. 967 F.3d at 666 (citing *United States v. Snyder*, 865 F.3d 490, 500 (7th Cir. 2017); *United States v. White*, 883 F.3d 983, 987 (7th Cir. 2018)). These cases encourage courts to say—*after* calculating the applicable range— whether they would choose the same sentence based only on the § 3553(a) analysis. *Corner* expressly analogizes the procedural requirements when deciding a First Step Act motion to the requirements at sentencing, when it is "significant procedural error" to select a sentence without first calculating the guideline range. *Id.* at 665–66 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)).

Next, the government argues that *Corner* is distinguishable because, in that case, the district court did not address the movant's eligibility, whereas the court here noted that he was eligible for a reduction. Therefore, the government says, the

court implicitly recognized that the statutory penalties were modified.

The distinction is irrelevant. Eligibility for a Section 404(b) reduction is determined based on the statute of conviction alone, *Shaw*, 957 F.3d at 739, so the court's eligibility finding shows nothing but its recognition that Blake was convicted of a covered offense. It follows that the penalties for the offense were lowered, but that says nothing about whether the district court knew what they were or considered them. Further, *Corner* states that its analysis is not limited to cases where the court failed to determine eligibility. 967 F.3d at 665. The procedural requirements—calculating new penalties before deciding on the motion—apply to all First Step Act motions. *Id.*

The government argues in the alternative that any error was harmless. It maintains that the record "plainly supports" a guideline range of 360 months to life, so Blake's sentence is still appropriate. Citing Ivory's testimony, the government argues that evidence was sufficient to support a finding that Blake was responsible for over 2.8 kilograms of crack.

This argument is new on appeal and would require us to make factual findings in the first instance, which is not our role. *See Gall*, 552 U.S. at 51–52; *United States v. Outland*, 993 F.3d 1017, 1023 (7th Cir. 2021). The government might be correct that the record could support a drug quantity of 2.8 kilograms, yielding a guideline range of 360 months to life. But it might support other findings, depending on how the evidence is weighed; that is why drug quantities are factual findings that we review only for clear error: a district court is entitled to choose among reasonable options. *See United States v. Mojica*, 863 F.3d 727, 732 (7th Cir. 2017).

Regardless, and perhaps most importantly, the nature of the error precludes a finding of harmlessness. The Supreme Court has repeatedly emphasized in the sentencing context that "district courts *must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 569 U.S. 530, 541 (2013) (quoting *Gall*, 552 U.S. at 50 n.6). Even when courts decide to vary from the range, the Guidelines serve as a "benchmark" and "starting point"—the court must consider the extent of the deviation and provide a sufficient explanation for it. *Id.* at 541–42. By "treat[ing] the new penalties as irrelevant," the court's exercise of discretion was untethered from the "benchmark" of the new sentencing framework, and thus the error was not harmless. *Corner*, 967 F.3d at 666; *see also United States v. Snyder*, 635 F.3d 956, 962 (7th Cir. 2011) (treating as harmless failure to consider guideline range at resentencing after revocation of supervised release would "eviscerate the requirement that the district court take the Guidelines into account").

Further, the error was not harmless because of Blake's argument that the court must use a much lower drug quantity—500 grams, the amount the government stipulated to in its plea agreement with Ivory. After Blake was sentenced, we held that district courts cannot use one drug quantity for a cooperator and a higher quantity for a coconspirator who went to trial if the record is the same with respect to each defendant. *See United States v. Barnes*, 602 F.3d 790, 796–97 (7th Cir. 2010). And we recently decided that the First Step Act authorizes, but does not require, district courts to apply intervening judicial decisions when deciding motions for reduced sentences. *See Fowowe*, 1 F.4th at 524. In light of that decision, the district court here could apply the intervening rule of

*Barnes* and conclude that Blake should not be held responsible for more than 500 grams of crack. That would produce a guideline range of 235–293 months. Given the wide range of potential guideline ranges and substantial difference in consequences to Blake, the error could not have been harmless:

| Drug Quantity | Total Offense Level | Guideline Range |
|---|---|---|
| 2.8–13 kg | 40–42 | 360–life |
| 1.5–2.8 kg | 38 | 292–365 months |
| 500 g | 36 | 235–293 months |

The government counters that Blake forfeited an argument based on *Barnes* by failing to develop it in the district court. (In his counseled motion, Blake mentioned the stipulation, and resulting guideline range, in a footnote, but did not cite case law.) But we need not decide whether Blake forfeited the argument. As the government points out, *Fowowe* does not *require* courts to apply intervening precedent when deciding First Step Act motions. 1 F.4th at 524. Therefore, the court's failure to do so alone could not be reversible error under any standard of review. Rather, *Fowowe* is simply another reason why the procedural error was not harmless: The court could resolve the drug-quantity dispute in a way that Blake's previously below-guideline sentence would be a decade longer than the top of the now-applicable guideline range. All else equal, that outcome would seem to run afoul of Congress's intent to reduce disparities between sentences for crack and powder cocaine offenses.

Blake advances a separate argument that his post-sentencing conduct weighs in favor of a reduction. The district court gave reasons for rejecting this argument, and how much weight to place on Blake's rehabilitative efforts is within the district court's discretion. *See United States v. Sutton*, 962 F.3d 979, 986 (7th Cir. 2020). On remand the court will again have the chance to weigh relevant sentencing factors after it considers the amended sentencing parameters.

For these reasons, we VACATE the judgment and REMAND for reconsideration of Blake's motion. We see no basis for reassigning this case under Circuit Rule 36, so we decline Blake's request that we do so.