# United States Court of Appeals
## For the First Circuit

No. 19-1615

UNITED STATES OF AMERICA,

Appellee,

v.

CARL SMITH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Steven J. McAuliffe, U.S. District Judge]

Before

Lynch, Stahl, and Kayatta,
Circuit Judges.

Behzad Mirhashem, Assistant Federal Public Defender, for appellant.

Seth R. Aframe, Assistant United States Attorney, with whom Scott W. Murray, United States Attorney, was on brief, for appellee.

April 8, 2020

**KAYATTA**, **Circuit Judge**.  Having served thirteen years of a seventeen-and-a-half-year sentence for distributing less than two grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), Carl Smith seeks a sentence reduction under Section 404 of the First Step Act of 2018.  The district court denied his request, finding that he was ineligible for such a possible reduction because his offense was not a "covered offense" under the Act.  For the following reasons, we reverse.

## I.

In January 2007, a federal jury found Smith guilty on two counts of distribution of crack cocaine and one count of distribution of powder cocaine, all in violation of 21 U.S.C. § 841(a)(1).  The presentence investigation report (PSR) attributed to Smith a total of 1.69 grams of crack cocaine and 3.36 grams of powder cocaine.  These quantities fell below the threshold for a mandatory-minimum sentence.  See id. § 841(b)(1)(C).  However, the PSR determined that Smith was a career offender under U.S.S.G. § 4B1.1, based on two prior convictions for residential burglary and a prior conviction for drug distribution.  Smith's Guidelines Sentencing Range (GSR) was thus 210-262 months' imprisonment.  In April 2007, the district court sentenced Smith to 210 months.  See United States v. Smith, 531 F.3d 109, 113 (1st Cir. 2008) (affirming Smith's sentence).

- 2 -

In August 2010, President Obama signed into law the Fair Sentencing Act, which raised the crack-cocaine threshold quantities for triggering mandatory-minimum sentences. See Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372. We display the textual modifications to § 841 wrought by the Fair Sentencing Act with bolding and strikes as follows:

> (a) Unlawful Acts
> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .
>
> (b) Penalties
> Except as provided in section 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:
> (1)
> (A) In the case of a violation of subsection (a) of this section involving--
> . . .
> (ii) 5 kilograms or more of a mixture or substance containing detectable amounts of [cocaine] . . .
> (iii) ~~50 grams~~ **280 grams** or more of a mixture or substance described in clause (ii) which contains cocaine base . . .
> such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .
> (B) In the case of a violation of subsection (a) of this section involving--
> . . .
> (ii) 500 grams or more of a mixture or substance containing detectable amounts of [cocaine] . . .

(iii) ~~5 grams~~ **28 grams** or more of a mixture or substance described in clause (ii) which contains cocaine base . . .
such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years . . . .
(C) In the case of a controlled substance in schedule I or II, . . . except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years . . . .

21 U.S.C. § 841 (effective Aug. 3, 2010); see Fair Sentencing Act of 2010 § 2, 124 Stat. at 2372.[1]

The modifications did not apply retroactively to defendants like Smith who were sentenced before passage of the Fair Sentencing Act. See Dorsey v. United States, 567 U.S. 260, 264 (2012); United States v. Flores-Rivera, 787 F.3d 1, 33 (1st Cir. 2015). But in December 2018, President Trump signed into law the First Step Act. See First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222. Section 404 of that Act

---

[1] The provisions in § 841(b)(1)(A)(ii) and § 841(b)(1)(B)(ii) apply to powder cocaine, and the provisions in § 841(b)(1)(A)(iii) and § 841(b)(1)(B)(iii) apply to crack cocaine. A principal purpose of the Fair Sentencing Act was to reduce the much maligned 100-to-1 ratio between powder- and crack-cocaine quantities for triggering the same minimum sentences, which many believed created racial disparities in sentencing due to the higher prevalence of crack cocaine in African-American communities. See Dorsey v. United States, 567 U.S. 260, 266–68 (2012); Kimbrough v. United States, 552 U.S. 85, 98 (2007); see also United States v. Robinson, 241 F.3d 115, 118 (1st Cir. 2001) (explaining the three-tiered penalty regime under the Controlled Substances Act as modified by the Anti-Drug Abuse Act of 1986), abrogated on other grounds by Alleyne v. United States, 570 U.S. 99 (2013).

offers certain persons convicted under § 841 prior to enactment of the Fair Sentencing Act a chance to seek a retroactively reduced sentence.  It states:

> (a) DEFINITION OF COVERED OFFENSE. -- In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by a section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED. -- A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

First Step Act of 2018 § 404, 132 Stat. at 5222;[2] see also 18 U.S.C. § 3582(c)(1)(B) ("[T]he court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute . . . .").

Smith moved in April 2019 for a sentence reduction under Section 404 of the First Step Act.  The government opposed his motion on the grounds that Smith had not been sentenced for a "covered offense" as defined in that statute.  In a nutshell, the

---

[2]  Not relevant here, Section 3 of the Fair Sentencing Act eliminates the mandatory minimum for simple possession in violation of 21 U.S.C. § 844(a).  See 124 Stat. at 2372.

government reasoned that, because the penalties for the quantity of controlled substances attributed to Smith remained the same after passage of the Fair Sentencing Act, he was not convicted for "a violation of a Federal criminal statute, the statutory penalties for which were modified."  The district court agreed and denied the motion.  Smith timely appealed, presenting an issue of law for which our review is de novo.  See United States v. Brown, 500 F.3d 48, 59 (1st Cir. 2007).

## II.

## A.

We begin with the statutory text, asking first whether the phrase "statutory penalties for which were modified" in the definition of "covered offense" in the First Step Act applies to the term "Federal criminal statute" (i.e., the statute of conviction) or the term "violation" (i.e., the defendant's particular conduct).  Smith argues the former, and the government acknowledges that this argument "is supported by case law construing 'covered offense.'"  See United States v. Jackson, 945 F.3d 315, 320 (5th Cir. 2019); United States v. Wirsing, 943 F.3d 175, 185 (4th Cir. 2019); United States v. Williams, 402 F. Supp. 3d 442, 445-48 (N.D. Ill. 2019); see also United States v. McDonald, 944 F.3d 769, 772 (8th Cir. 2019) ("The First Step Act applies to offenses, not conduct, and it is [the defendant's] statute of conviction that determines his eligibility for relief."

(citations omitted)); <u>United States</u> v. <u>Beamus</u>, 943 F.3d 789, 791 (6th Cir. 2019) (per curiam) ("[The defendant] was convicted of an offense for which the Fair Sentencing Act modified the statutory penalty . . . ."). With no hint of an argument by the government or the district court that we should hold otherwise, we will assume that this case law is correct.

We next ask whether the phrase "Federal criminal statute" in the First Step Act refers to 21 U.S.C. § 841 generally or only to a subsection of § 841, and, if the latter, which one. Smith argues that the "Federal criminal statute" is § 841(a), and that "the statutory penalties" for that subsection are set out in § 841(b)(1). The headings of these subsections bolster this argument -- § 841(a) is labeled "[u]nlawful acts" and § 841(b) is labeled "[p]enalties." <u>See</u> 21 U.S.C. § 841(a), (b); <u>see also</u> <u>Merit Mgmt. Grp., LP</u> v. <u>FTI Consulting, Inc.</u>, 138 S. Ct. 883, 893 (2018) ("Although section headings cannot limit the plain meaning of a statutory text, they supply cues as to what Congress intended." (citations and internal quotation marks omitted)).[3] The body of the statute also bolsters Smith's argument -- § 841(a) lists the acts that violate the law (manufacturing, distributing, etc.), whereas § 841(b) correlates increasing penalties to the quantities

---

[3] Here we look to the headings within § 841 not to interpret that Section itself, but rather to inform us as to Congress's understanding of that Section when it later enacted the First Step Act. As such, the headings take on added significance.

associated with the acts that violate § 841(a).  Compare id. § 841(a)(1), with id. § 841(b)(1)(A), (B).

The government nevertheless argues that the "Federal criminal statute" referred to in Section 404 of the First Step Act is each specific subsection of § 841(b)(1).  In other words, the government contends, § 841(b)(1)(A)(iii), § 841(b)(1)(B)(iii), and § 841(b)(1)(C) are each different statutes with their own statutory penalties.  In making this argument, the government relies heavily on Alleyne v. United States, 570 U.S. 99 (2013). In Alleyne, the Supreme Court held that mandatory-minimum-raising facts (like the threshold drug quantities in § 841(b)(1)) must be proven to a jury beyond a reasonable doubt under the Sixth Amendment.  See id. at 112–16 (applying Apprendi v. New Jersey, 530 U.S. 466 (2000)).  Thus, says the government, the subsections of § 841(b)(1) set out different elements and are hence different "Federal criminal statute[s]."

We disagree with the government's reasoning.  The relevant statute that Smith violated is either § 841 as a whole, or § 841(a), which describes all the conduct necessary to violate § 841.  Section 841(b)(1), in turn, sets forth how the penalties for that conduct vary based on drug quantity.  The fact that the Constitution's procedural requirements mandate that the drug quantity be found by the jury to enhance the minimum penalty does not mean that a convicted defendant did not commit the violation

- 8 -

identified by § 841(a).  See Butterworth v. United States, 775 F.3d 459, 466–67 (1st Cir. 2015) (treating Alleyne as announcing a new rule of criminal procedure); United States v. Robinson, 241 F.3d 115, 118 (1st Cir. 2001) ("The penalties for violating section 841(a)(1) are articulated in 21 U.S.C. § 841(b)."). Even accepting the government's point that Alleyne treats the quantity specifications of § 841(b)(1) as elements of the crime to be proven, we are not trying to determine which section or sections set forth the elements of a crime in the abstract.  Rather, we aim to determine what Congress meant by the phrase "Federal criminal statute, the statutory penalties for which were modified by . . . the Fair Sentencing Act," First Step Act of 2018 § 404(a), 132 Stat. at 5222.  We see no reason to believe that Congress would have thought the holding in Alleyne concerning criminal procedure and the elements of a crime informed the meaning of the phrase "Federal criminal statute."  Instead, we agree with Smith that Congress more likely intended to refer to § 841(a) (or § 841 as a whole[4]) as the "Federal criminal statute" in question.

We ask next whether "the statutory penalties for" § 841(a)(1), the statute of conviction in this case, "were modified by section 2 of the Fair Sentencing Act of 2010."  Id.  The answer

---

[4] We need not actually decide whether the applicable statute is § 841 or § 841(a) because neither party argues that it would make any difference in this case.

is an obvious "yes." The term "modified," given its ordinary meaning, includes any change, however slight. See MCI Telecomms. Corp. v. Am. Tel. & Tel. Co., 512 U.S. 218, 225 (1994) (citing various dictionary definitions of the word "modify"). As noted, Section 2 of the Fair Sentencing Act raised, and hence "modified," the thresholds for crack-cocaine offenses under § 841(b)(1). Since § 841(b)(1) was "modified" as to crack cocaine, and § 841(b)(1) sets forth all the "statutory penalties" for § 841(a)(1), the violation in this case is a "covered offense" under Section 404 of the First Step Act.[5]

Even under the government's preferred definition of "Federal criminal statute," we would still consider Smith's conviction to be a "covered offense." The government argues that Smith was convicted under § 841(b)(1)(C) for distributing a small (or indeterminate) quantity of a controlled substance. Thus, in the government's view § 841(b)(1)(C) is the "Federal criminal statute" in question, and since the Fair Sentencing Act did not literally change the text of § 841(b)(1)(C), the statutory penalties for that subsection were not "modified." But § 841(b)(1)(C) applies to any "case of a controlled

---

[5] A more difficult question would be whether a violation of § 841(a)(1) involving only a controlled substance other than crack cocaine (heroin, for example) would also be considered a "covered offense." Since Smith was convicted for distributing crack cocaine (as well as powder cocaine), we need not decide that issue.

- 10 -

substance . . . except as provided in subparagraphs (A), (B), and (D)." 21 U.S.C. § 841(b)(1)(C). Since § 841(b)(1)(C) is defined in part by what § 841(b)(1)(A) and § 841(b)(1)(B) do not cover, a modification to the latter subsections also modifies the former by incorporation. In effect, § 841(b)(1)(C) set forth the penalties for quantities between zero and five grams of crack cocaine prior to the Fair Sentencing Act, and between zero and twenty-eight grams after. This is a modification. The fact that the prescribed sentencing range (zero to twenty years) under § 841(b)(1)(C) did not change is immaterial -- the Fair Sentencing Act did not change the mandatory minimum or maximum for violations of § 841(b)(1)(A) or § 841(b)(1)(B), either, only the threshold quantities.

The change in § 841(b)(1)(C)'s upper bound is no small point, even for defendants guilty of distributing less than five grams of crack, because the statutory benchmarks likely have an anchoring effect on a sentencing judge's decision making. Cf. Dorsey, 567 U.S. at 267-69 (explaining how the base-offense-level quantities under U.S.S.G. § 2D1.1(c) are keyed to the statutory quantities in § 841(b)). Smith's violation, in context, looks less significant and thus perhaps less worthy of as long of a sentence under § 841 as the statute exists now than as it existed at the time of his sentencing. Under the old version of § 841, 1.69 grams of crack was 34% of a quantity mandating a five-year minimum. Now it is only 6% of that threshold.

The government's own view of how the First Step Act works buttresses our conclusion that Congress intended to provide potential relief to persons like Smith whose penalties were dictated by § 841(b)(1)(C) and therefore were only indirectly affected by the minimum sentences called for by § 841(b)(1)(A)(iii) and § 841(b)(1)(B)(iii). Over eight years elapsed between passage of the Fair Sentencing Act and passage of the First Step Act. Therefore, the First Step Act could provide no meaningful recourse for defendants whose sentences were directly driven by (i.e., set at) the five- and ten-year minima. So the principal group of potential beneficiaries on the day the First Step Act was enacted, even as among those who the government concedes were sentenced for covered offenses, were those defendants who received sentences that were in excess of, and thus only indirectly affected by, the penalty floors. See, e.g., Beamus, 943 F.3d at 790 (holding that a career offender sentenced in 2002 under § 841(b)(1)(B)(iii) was eligible for First Step Act relief). Indeed, were this group not covered, the First Step Act would hardly have been the "historic achievement" it was claimed to be. See 164 Cong. Rec. S7749 (daily ed. Dec. 18, 2018) (statement of Sen. Leahy) ("[W]hen I look at the scope of reforms before us today[,] including . . . retroactive application of the Fair Sentencing Act, . . . I believe this is a historic achievement."); see also Stone v. INS, 514 U.S. 386, 397 (1995)

- 12 -

("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect."). And we think it most unlikely that Congress intended to deny sentencing relief to defendants guilty of distributing small quantities of crack cocaine while allowing relief for those defendants guilty of distributing larger amounts whose original sentences were not driven by the mandatory minimum.

The government has drawn our attention to several other circuit court opinions holding that defendants sentenced under § 841(b)(1)(C) were not convicted for a "covered offense" under Section 404. See United States v. Foley, No. 19-11847, 2020 WL 104349, at *1 (11th Cir. Jan. 9, 2020) (per curiam); United States v. Brown, 785 F. App'x 189, 190 (4th Cir. 2019) (mem.) (per curiam); United States v. Martinez, 777 F. App'x 946, 947 (10th Cir. 2019) (mem.); United States v. Duggan, 771 F. App'x 261, 261 (4th Cir. 2019) (mem.) (per curiam). Those opinions, all of which are unpublished and nonprecedential in their own circuits, contain very little analysis and do not address the arguments raised by Smith in this case. As such, we do not find them persuasive.[6]

---

[6] After oral arguments in a case raising this same issue, the Fourth Circuit recently vacated the denial of a defendant's motion for First Step Act relief for reasons that "will be further explained in [the court's] forthcoming opinion." United States v. Woodson, No. 19-6976, 2020 WL 1623742 (4th Cir. Apr. 2, 2020) (mem.).

**B.**

Now that we have determined that Smith was convicted for a covered offense, the issue remains as to what exactly his remedy is. There are at least two possibilities: he might be eligible for plenary resentencing, in which case his GSR would potentially be recalculated under the current version of the Sentencing Guidelines Manual, see U.S.S.G. § 1B1.11(a), or he might be eligible for a procedure (either with or without a hearing) similar to that outlined in the Godin/Ahrendt doctrine, in which case his GSR would remain as it was in 2007 but the district court might nevertheless vary downwardly, see United States v. Frates, 896 F.3d 93, 102 (1st Cir. 2018) (citing United States v. Ahrendt, 560 F.3d 69 (1st Cir. 2009); United States v. Godin, 522 F.3d 133 (1st Cir. 2008)). This is a significant issue, because the Guidelines have been amended since Smith was sentenced in 2007; most notably, burglary is no longer considered a "crime of violence." See U.S.S.G. § 4B1.2(a)(2); id. app. C, amend. 798 (effective Aug. 1, 2016).[7] So Smith would not be considered a career offender subject

---

[7] The Guidelines' table for determining the base offense level based on drug quantities has also been amended to mirror the Fair Sentencing Act's changes to the statutory penalties. See U.S.S.G. § 2D1.1(c); id. app. C, amend. 750 (effective Nov. 1, 2011) (making permanent the temporary changes of id. app. C, amend. 748 (effective Nov. 1, 2011)); see also Dorsey, 567 U.S. at 267-69.

- 14 -

to U.S.S.G. § 4B1.1 under the current manual, and his GSR would presumably be much lower now.[8]

The parties have not sufficiently briefed this issue on appeal, so we leave it to the district court to decide in the first instance on remand.[9] We make two additional points, though. First, regardless of what procedure applies, nothing in this opinion should be construed as mandating a reduced sentence. The First Step Act gives district courts discretion to grant or deny a sentencing reduction. First Step Act of 2018 § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). We hold only that Smith's violation was a "covered offense." Second, we encourage the parties and the district court not to delay this case longer than necessary. Smith has already served three quarters of his lengthy sentence, so the window for considering meaningful relief is dwindling.

---

[8] Of course, even if the Godin/Ahrendt procedure applies, the district court could still take into consideration this insight from the updated manual in deciding whether a downward variance is appropriate. See U.S.S.G. § 1B1.11(b)(2) ("[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes."); see also United States v. Rodriguez, 630 F.3d 39, 42 (1st Cir. 2010).

[9] We likewise leave it to the district court to determine the impact of Smith's conviction for distributing 3.36 grams of powder cocaine.

## III.

For the foregoing reasons, we <u>reverse</u> the district court's order in this matter and <u>remand</u> for further proceedings consistent with this opinion.