In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 19-2067, 19-2069, 19-2078 & 19-2117

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TERRANCE J. SHAW, FRED T. ROBINSON,
RASHANN GRIER, and ROMOND FOULKS,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Central District of Illinois.
No. 07-CR-10004 — **Joe B. McDade**, *Judge.*
No. 10-CR-20031 — **James E. Shadid**, *Judge.*
Nos. 05-CR-10053 & 09-CR-40081 — **Michael M. Mihm**, *Judge.*

ARGUED DECEMBER 13, 2019 — DECIDED APRIL 28, 2020

Before MANION, KANNE, and BRENNAN, *Circuit Judges.*

KANNE, *Circuit Judge.* In 2018, Congress passed the First
Step Act to address the disparities between sentences for
crack and powder cocaine. Among other things, the First Step
Act allows certain criminal defendants to seek, and district

courts to impose, sentence reductions if the defendant was previously convicted of a "covered offense."

To determine whether a defendant is eligible for a reduced sentence under the First Step Act, a court needs to look only at a defendant's statute of conviction, not to the quantities of crack involved in the offense. More specifically, if a defendant was convicted of a crack-cocaine offense that was later modified by the Fair Sentencing Act, he or she is eligible to have a court consider whether to reduce the previously imposed term of imprisonment. Here, each defendant's statutory penalties for crack-cocaine offenses had been modified by the Fair Sentencing Act, so each is eligible to have a court consider whether to reduce the defendant's sentence under the First Step Act. Because each district court did not do so in each of their respective cases, we reverse and remand all three respective district court orders denying the motions for a sentence reduction.

## I. BACKGROUND

The First Step Act gives a court discretion to reduce the sentence of a defendant previously convicted of a "covered offense." *See* Pub. L. No. 115-391, 132 Stat. 5194, § 404(a) (2018). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." *Id.* § 404(a). The offense must also have been "committed before August 3, 2010." *Id*.

A judge considering a motion for a reduced sentence under the First Step Act is faced with two questions. First, *may* the court reduce the sentence? And second, *should* the court reduce the sentence? The first question, which concerns a

defendant's eligibility for a sentence reduction, is governed by sections 404(a) and 404(c) of the First Step Act. If a defendant is eligible for a reduction, then a court "may" impose a reduced sentence. This appeal primarily concerns the question of eligibility.

Because the operation of the First Step Act is contingent upon changes made to the Fair Sentencing Act of 2010, we begin with a bit of background about the Fair Sentencing Act.

Drug-offense penalties under federal law depend in part on the weight and type of the drug at issue and in part on the defendant's prior convictions. For crack offenses committed before August 2010, the statutory penalties relating to imprisonment were the following:

| Section 841 | Quantity | No prior offense | 1 prior offense | 2 prior offenses |
|---|---|---|---|---|
| (b)(1)(A) | > 50 grams | 10 years–life | 20 years–life | life |
| (b)(1)(B) | > 5 grams | 5-40 years | 10 years–life | 10 years–life |
| (b)(1)(C) | any | 0–20 years | 0–30 years | 0–30 years |

21 U.S.C. § 841 (2006 & Supp. IV).

In 2010, Congress passed the Fair Sentencing Act. *See* Pub. L. No. 111-220, 124 Stat. 2372 (2010). Section 2 of that Act, referred to in the First Step Act,[1] changed the statutory penalties

---

[1] The First Step Act also refers to section 3 of the Fair Sentencing Act, which eliminated the mandatory minimum prison term for simple possession of crack cocaine under 21 U.S.C. § 844(a). That section is not at issue in this case.

for crack offenses by increasing the quantity of crack required for imprisonment:

| Section 841 | Quantity | No prior offense | 1 prior offense | 2 prior offenses |
| --- | --- | --- | --- | --- |
| (b)(1)(A) | > 280 grams | 10 years–life | 20 years–life | life |
| (b)(1)(B) | > 28 grams | 5-40 years | 10 years–life | 10 years–life |
| (b)(1)(C) | any | 0–20 years | 0–30 years | 0–30 years |

As the two charts illustrate, the Fair Sentencing Act changed the quantity that triggers certain penalties of imprisonment. Under § 841(b)(1)(A), the threshold quantity increased from 50 grams to 280 grams; and under § 841(b)(1)(B), the threshold quantity increased from 5 grams to 28 grams. These changes reflected a recognition that the tremendous disparities in punishment of powder-cocaine and crack-cocaine offenses disparately impacted African Americans. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012).

But the Fair Sentencing Act's changes to the sentencing scheme applied only to defendants who were sentenced after the law's enactment on August 3, 2010, *United States v. Fisher*, 635 F.3d 336, 338 (7th Cir. 2011), *rev'd sub nom. Dorsey*, 567 U.S. at 282, leading us to comment that the Act might more accurately be known as "The Not Quite as Fair as it could be Sentencing Act of 2010."

Congress eventually addressed this deficiency when it passed the First Step Act of 2018. Section 404(b) of that Act makes the Fair Sentencing Act retroactively applicable to defendants whose offenses were committed before August 3,

2010. Now, a district court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act … were in effect at the time the covered offense was committed." First Step Act, § 404(b).

Defendants Terrance Shaw and Fred Robinson were convicted—in 2007 and 2010, respectively—of possessing crack cocaine with intent to distribute. 21 U.S.C. § 841(a)(1), (b)(1)(B). Defendants Rashann Grier and Romond Foulks were convicted—in 2003 and 2010, respectively—of conspiring to distribute crack cocaine. *Id.* §§ 841(b)(1)(A), 846. In 2019, each defendant moved for a sentence reduction under Section 404(b) of the newly passed First Step Act. Each district court denied the motion, concluding that the defendant was ineligible to seek relief under the First Step Act because his crack offense is not a "covered offense" under the Act. As for Robinson, the court ruled in the alternative that, even if Robinson were eligible for a sentence reduction, the court would not exercise its discretion to reduce his sentence.

The defendants and the government disagree about whether the defendants are eligible to have a court consider reducing their sentences under the First Step Act. The crux of this disagreement is whether the defendants' crack offenses are "covered offenses," as defined by the First Step Act.

The defendants contend that anyone sentenced for violating a federal criminal statute that was modified by the Fair Sentencing Act of 2010 is eligible for a sentence reduction under the First Step Act. Under this straightforward theory, a court need only (1) examine the statute under which a defendant was charged, and (2) determine whether the statutory penalties for that offense were modified by the Fair Sentencing Act.

The government offers a contrasting interpretation that would have a court conduct a more fact-intensive analysis to determine eligibility for resentencing under the First Step Act. Under this interpretation, a court would look to the drug quantity described in a defendant's presentence investigation report or a plea agreement's factual basis to determine whether the Fair Sentencing Act altered a defendant's penalty range.

The facts of these cases underscore the practical differences between these competing interpretations. Under the defendants' theory, they are eligible to have a court consider their motions. They were convicted of crack offenses carrying statutory penalties the Fair Sentencing Act modified. But under the government's proposed framework, the defendants would be ineligible for sentence reductions. That's because the quantities of crack involved in each defendant's offense exceeded the new quantity thresholds set by the Fair Sentencing Act.

Shaw and Robinson were each convicted of possession of crack with intent to distribute, and the penalties for this offense are established under 21 U.S.C. § 841(b)(1)(B). The Fair Sentencing Act changed the drug quantities that trigger mandatory-minimum prison terms under § 841(b)(1)(B) from 5 grams to 28 grams. Officers found 33.8 grams of crack in Shaw's kitchen cabinet. Robinson possessed 32.7 grams of crack. Both quantities exceed the 28-gram threshold.

Similarly, Grier and Foulks were convicted of conspiracy to distribute crack, the punishment for which is set out in 21 U.S.C. § 841(b)(1)(A). The trigger amount for the mandatory-minimum penalties under § 841(b)(1)(A) changed from 50 grams to 280 grams. Grier conspired to distribute 2.91

kilograms of crack, which is well over the 280-gram threshold. Foulks conspired to distribute 8.4 kilograms of crack.

## II. ANALYSIS

The district courts denied each defendant's motion for a sentence reduction by concluding that the defendant in each case was ineligible under the First Step Act to have his sentence reduced. Because these decisions turn on a question of statutory interpretation, we review them *de novo*. *See United States v. Miller*, 883 F.3d 998, 1003 (7th Cir. 2018).

### A. The Defendants Were Convicted of "Covered Offenses"

Our first interpretive task is to determine the meaning of a "covered offense." First Step Act, § 404(a). We begin, as we must, with the relevant text of the First Step Act, which defines a covered offense as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010." *Id.* The question is: does "the statutory penalties for which were modified by section 2 or 3" refer to "Federal criminal statute" or to "a violation of a federal criminal statute"? We join our sister circuits in holding that the phrase modifies "federal criminal statute." *See United States v. Smith*, 954 F.3d 446 (1st Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 320 (5th Cir. 2019); *United States v. McDonald*, 944 F.3d 769, 772 (8th Cir. 2019); *United States v. Beamus*, 943 F.3d 789, 791–92 (6th Cir. 2019); *United States v. Wirsing*, 943 F.3d 175, 185–86 (4th Cir. 2019). This sensible interpretation is supported by both a time-honored canon of statutory construction and the statutory context.

First, under the nearest-reasonable-referent canon, we presume a modifier refers to the nearest reasonable referent. "Modifiers should come, if possible, next to the words they

modify." William Strunk Jr. & E.B. White, The Elements of
Style 30 (50th Anniversary ed. 2009). And, as is the case here,
"[w]hen the syntax involves something other than a parallel
series of nouns or verbs, a prepositive or postpositive modi-
fier normally applies only to the nearest reasonable referent."
Antonin Scalia & Brian A. Garner, Reading Law: The Interpre-
tation of Legal Texts 152–53 (2012).

Let's apply that canon to the statute, which reads:

> "covered offense" means a violation of a Federal
> criminal statute, the statutory penalties for which
> were modified by section 2 or 3 of the Fair Sentenc-
> ing Act of 2010 ... that was committed before August
> 3, 2010.

First Step Act, § 404(a). Mindful that modifiers generally at-
tach to the closest noun, we conclude the phrase "the statu-
tory penalties for which were modified by Section 2" relates
to "federal criminal statute," not "violation," because the for-
mer is closer to the modifier, making "federal criminal stat-
ute" the nearest reasonable referent. Under this interpreta-
tion, whether an offense is covered simply depends on the
statute under which a defendant was convicted. *See also*
*Mellouli v. Lynch*, 135 S. Ct. 1980, 1990 (2015) (applying near-
est-reasonable-referent canon to statute that reads "[a]ny al-
ien who … has been convicted of a violation of … any law or
regulation … relating to a controlled substance" is deportable
and concluding "relating to" modified "law or regulation,"
not "violation").

Arguing for the opposing interpretation—that the modi-
fying phrase applies to "a violation"—the government rea-
sons that the First Step Act's language "committed before Au-
gust 3, 2010," § 404(a), points towards a fact-specific inquiry

into the particular circumstances of the offense. *See Nijhawan v. Holder*, 557 U.S. 29, 33–34 (2009). But the language indicating when an offense must have been committed by does not transform the eligibility inquiry into a complicated, fact-intensive determination. As we explained above, that language makes the changes in the Fair Sentencing Act retroactively applicable to those whose offenses were committed before August 3, 2010.

Our interpretation is further strengthened by the statutory context. *See Lockhart v. United States*, 136 S. Ct. 958, 963 (2016) (interpretation under statutory canon of construction can be overcome by other indicia of meaning within the statutory scheme). The relevant provision of the Fair Sentencing Act of 2010, section 2, did not modify the penalties on an individual basis. Instead, it broadly modified penalties for entire categories of offenses that include fixed aggravating elements, such as the weight of the drug.

Accordingly, we hold that the statute of conviction alone determines eligibility for First Step Act relief. The defendants' offenses are "covered offenses" under the plain language of the First Step Act because the Fair Sentencing Act modified the penalties for crack offenses as a whole, not for individual violations.

With this conclusion, each defendant is eligible to seek relief under the First Step Act because each committed a crack-cocaine offense before August 3, 2010, and the penalty for each of those crimes was modified by the Fair Sentencing Act. Because Shaw, Grier, and Foulks are eligible to seek relief under the First Step Act, the district courts' orders in those cases should be reversed.

Robinson is also eligible to seek relief under the First Step Act, but his case requires further analysis.

### B. The District Court Did Not Provide a Sufficient Explanation for Its Alternative Holding as to Robinson

While the district court found Robinson ineligible to seek relief under the First Step Act, the court also ruled that, even if Robinson were eligible, it would not reduce his sentence. Robinson challenges that alternate conclusion.

In arriving at its alternate conclusion, the district court reasoned that Robinson's "amended guidelines range would become 188–235 months instead of 262–327 months." But Robinson was initially sentenced to 180 months, which "would be a downward departure even from the amended guidelines range." So, the court "decline[d] to reduce" Robinson's sentence, "even if he were eligible." The court gave no indication that it had considered the arguments presented in Robinson's motion or accounted for 18 U.S.C. § 3553(a) factors.

The government contends that the district court's alternative ruling makes its eligibility error harmless. To show harmless error, the government must show that the district court's eligibility analysis did not affect the district court's decision not to reduce Robinson's sentence. *Cf. United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009). We must be sure that an alternate ruling is "'not just a conclusory comment tossed in for good measure,' but rather reflected a 'detailed explanation of the basis for the parallel result.'" *United States v. Foster*, 701 F.3d 1142, 1158 (7th Cir. 2012) (quoting *United States v. Hill*, 645 F.3d 900, 912 (7th Cir. 2011)).

Given the complexities of sentencing, the adequacy of a court's reasons for imposing a particular sentence depends on

"the circumstances of the particular case." *Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018) (explaining the extent of a district court's explanation for a sentence imposed varies with the circumstances). At the very least, we must be assured that a court weighing the appropriateness of a sentence "relied upon the record" and "considered the parties' arguments." *Id.*

Robinson presented two arguments in support of his assertion that his sentence should be reduced to 129 months' imprisonment. His first argument addressed his pre-sentence conduct; his second addressed his post-sentence conduct.

First, he argued that the original sentencing court's reasons for departing downward from the guidelines needed to be revisited as reasons for reducing his sentence in light of the First Step Act. When Robinson was first sentenced in 2010 by a different sentencing judge, Judge McCuskey, his guidelines range was 262–327 months. But Judge McCuskey departed from the guidelines and imposed a sentence of 180 months. Judge McCuskey believed Robinson's career-offender enhancement overrepresented the seriousness of his criminal history. Robinson also provided substantial assistance to the government; so much so, that the government previously recommended to Judge McCuskey a sentence 10% below the guidelines range. Because Robinson's initial sentence was imposed by a different sentencing judge, Robinson urged the new court to take note of the reasons for his previous, below-guidelines sentence. Notably, the government represented to the district court that if the First Step Act applied to Robinson's offense, it would honor its previous recommendation for a 10% reduction. Accordingly, the government requested

a below-guidelines sentence of 170 months if the First Step Act applied.

Second, Robinson also provided compelling information about his conduct in prison after sentencing and argued that this conduct warranted a sentence reduction. He reasoned that he had taken many educational courses; he had received consistently exemplary recommendations from his work supervisor in the prison-industries program, who noted that "he takes on extra duties, helps other areas, has a high level of personal conduct, and has great work ethic"; and he incurred only one disciplinary infraction—a minor one—over the nine years he had been incarcerated.

Nothing in the First Step Act prevents the district court from taking Robinson's arguments into consideration. *See United States v. Allen*, 19-3606, 2020 WL 1861973, at *2–3 (6th Cir. Apr. 14, 2020) (district court may consider evidence of a defendant's post-sentencing rehabilitation when deciding whether to impose a reduced sentence under the First Step Act); *accord United States v. Williams*, 943 F.3d 841, 844 (8th Cir. 2019), and *United States v. Jackson*, 945 F.3d 315, 322 n.7 (5th Cir. 2019); *see also United States v. Jackson*, 952 F.3d 492, 499 (4th Cir. 2020) (noting the Sentencing Commission's policy statements that are normally binding on a court in a sentence reduction under 18 U.S.C. § 3582(c)(2) are not binding on a court considering a First Step Act motion). For example, post-sentencing conduct may be relevant to § 3553(a) factors a court may wish to consider when determining whether to "impose a reduced sentence." First Step Act, § 404(b); *see, e.g., Pepper v. United States*, 562 U.S. 476, 504 (2011). That is because conduct after sentencing is "plainly relevant to 'the history and characteristics of the defendant'"; "pertinent to 'the need for the

sentence imposed'"; and may "critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Pepper*, 562 U.S. at 491 (quoting 18 U.S.C. § 3553(a)).

Importantly, nothing in the First Step Act precludes a court from utilizing § 3553(a)'s familiar framework when assessing a defendant's arguments; and doing so makes good sense. *See Allen*, 2020 WL 1861973, at *3.[2] Familiarity fosters manageability, and courts are well versed in using § 3553 as an analytical tool for making discretionary decisions. Similarly, nothing in the First Step Act precludes a court from looking at § 3553(a) factors anew. *Id.* Because of lengthy statutory penalties attached to crack offenses, a judge presiding over a request for a sentence reduction under the Act may not be the same judge who imposed a defendant's original sentence. This could hamper a judge's consideration of a defendant's arguments, because the new judge would be heavily reliant on a previous explanation and record that was "not created with the current statutory framework in mind." *Id.*; *accord United States v. Smith*, 954 F.3d 446, 451 (1st Cir. 2020). Counsel may have pressed different arguments based on a different statutory framework; a court may have credited those arguments differently, as the statutory minimum and maximum often anchor a court's choice of a suitable sentence. *Smith*, 954 F.3d at 451. What is more, today's Guidelines may

---

[2] We leave for another day whether a court is required to take § 3553(a) factors into consideration. The issue was not squarely presented in this case, and our court would benefit from more thorough briefing on it.

reflect updated views about the seriousness of a defendant's offense or criminal history.

So, a defendant may, as Robinson did, present evidence of his post-sentencing conduct in support of a reduced sentence. And a court may look to § 3553(a)'s familiar framework when assessing whether to impose a reduced sentence.

The First Step Act is a novel statute; and Robinson presented commensurately inventive arguments. *Chavez-Meza*, 138 S. Ct. at 1965 ("explanation may be necessary depending, perhaps, upon the legal arguments raised") (internal punctuation omitted). Despite the originality and potential of Robinson's arguments, the district court acknowledged neither in its summary holding that it would not reduce Robinson's sentence even if he were eligible. Nor does the order otherwise indicate that the court considered the arguments Robinson presented. It did not, for example, acknowledge the government's noteworthy recommendation that it would continue to endorse a sentence 10% below the new guidelines range (188–235 months), which would result in a sentence of 170 months instead of 180 months. And because the district court did not hold a hearing on the motion, we lack a corresponding transcript that might further supplement the court's explanation.

That silence leaves us without assurance that the district court *considered* Robinson's arguments, even if it didn't ultimately find them persuasive. *Cf. Hill*, 645 F.3d at 912–13, and *United States v. Martin*, 916 F.3d 389, 398 (4th Cir. 2019). As a result, the district court did not provide a sufficient explanation for its alternate holding. We must be satisfied that the court considered Robinson's arguments. On the limited record before us, we cannot be sure that the district court did so. And we cannot confidently say that, had the district court

taken Robinson's arguments into account, the court would have decided as it did: denying Robinson's motion for a reduced sentence. *Cf. United States v. Currie*, 739 F.3d 960, 966 (7th Cir. 2014). When, as here, we feel that a court's explanation is "inadequate," we may "send the case back to the district court for a more complete explanation." *Chavez-Meza*, 138 S. Ct. at 1965. We opt to exercise that course of action today with regard to Robinson.

We address one final argument. Robinson contends that the court misunderstood the scope of its discretion under the First Step Act by mistakenly believing it could not sentence Robinson to a below-guidelines sentence. He says the court's rationale—that Robinson's sentence is below the guidelines range, so no further adjustment is necessary or possible—is more akin to an analysis under 18 U.S.C. § 3582(c)(2) than to the individual review envisaged by the First Step Act. In support, Robinson points to other cases pending before us, in which the same district court made remarks similar to those in Robinson's case. *See, e.g.*, *United States v. David Vorties*, No. 19-2476; *United States v. Thaddeus Speed*, No. 19-2708.

In light of statements made in all three cases, Robinson expresses concern that the court's proposed distinction between "resentencing" and "sentence reduction" not only reflects a misapprehension about the extent of its discretion under the First Step Act, but also improperly likens a motion brought under the First Step Act to one brought under 18 U.S.C. § 3582(c)(2). *See Wirsing*, 943 F.3d at 185 (holding the "the distinct language of the First Step Act compels the interpretation that motions for relief under that statute are appropriately brought under § 3582(c)(1)(B)" and surmising "there is no reason to suppose that motions brought pursuant to

§ 3582(c)(1)(B) are subject to the restrictions particular to § 3582(c)(2), which are grounded in the text of the latter statute"). Robinson's concern about the court's distinction between a "resentencing" and "sentence reduction" may be justified, and we agree with the Fourth Circuit that the First Step Act does not include the limitations particular to § 3582(c)(2). But because our decision rests on other grounds, we have no occasion to speculate about the court's understanding of its discretion.

Our decision also expresses no view on how the district court should rule on remand. We say nothing further about the extent to which a court must address the various arguments a defendant presents, because here, the district court said nothing of the arguments we've mentioned. It is for the district court, in its discretion, to undertake a "complete review" of Robinson's motion and to determine whether he is entitled to relief. First Step Act, § 404(c).

### III. CONCLUSION

For the reasons set forth above, we REVERSE all four district court orders denying each defendant's respective motion for a sentence reduction, and REMAND to each district court the respective cases for proceedings consistent with this opinion.