In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 19-2075, 19-2476 & 19-2708

UNITED STATES OF AMERICA

*Plaintiff-Appellee,*

*v.*

RALPHFIELD HUDSON, DAVID W. VORTIES,
and THADDEUS SPEED,

*Defendants-Appellants.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 01-CR-50025 — **Philip G. Reinhard**, *Judge.*

Appeals from the United States District Court for the
Central District of Illinois.
Nos. 04-CR-20027 & 08-CR-20066 — **James E. Shadid**, *Judge.*

SUBMITTED APRIL 9, 2020 — DECIDED JULY 22, 2020

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* The First Step Act allows district courts to reduce the sentences of criminal defendants who have been convicted of a "covered offense." *See* Pub. L. No.

115-391, 132 Stat. 5194, § 404(a) (2018). A "covered offense" is a federal crime (committed before August 3, 2010) for which the statutory penalties were modified by the Fair Sentencing Act of 2010. *Id.* § 404(a).

These consolidated appeals present two questions: First, if a defendant's aggregate sentence includes both covered and non-covered offenses, may a court reduce the sentence for the non-covered offenses? Second, if the Fair Sentencing Act did not alter the Guidelines range for a defendant's covered offense, may a court reduce the defendant's sentence for that offense? We answer both questions affirmatively.

## I. BACKGROUND

The three defendants in these consolidated appeals were all convicted of at least one "covered offense" under the First Step Act. They each sought a sentence reduction, which the respective district court denied, at least in part, after concluding that the First Step Act did not permit the court to reduce[1] a sentence for (a) a non-covered offense that is grouped with a covered offense; or (b) a covered offense when the defendant's Guidelines rage was ultimately unaltered by the Fair Sentencing Act.

### A. Ralphfield Hudson

In 2003, a jury found Ralphfield Hudson guilty of two crack-cocaine offenses, which are "covered offenses" under the First Step Act, and one firearm offense, which is not a "covered offense." Specifically, those offenses were: possession with intent to distribute more than 5 grams of crack

---

[1] We use "reduce" and "imposed a reduced sentence" interchangeably throughout this opinion.

cocaine (Count I), 21 U.S.C. § 841(b)(1)(B); possession with intent to distribute less than 5 grams of crack cocaine (Count IV), *id.* § 841(b)(1)(C); and possession of a firearm by a person convicted of a felony (Count III), 18 U.S.C. § 922(g)(1). The conduct underlying these offenses involved 63 grams of crack and a handgun found in Hudson's vehicle. The district court sentenced Hudson to forty years (480 months) on the firearm offense (Count III); forty years (480 months) on the first crack offense; and thirty years (360 months) on the other crack offense (Count IV), all to run concurrently.

Hudson served sixteen years before moving for a reduced sentence under the First Step Act in 2019. The government agreed that the Fair Sentencing Act modified the statutory penalties for Hudson's crack offenses, making Hudson eligible for a reduced sentence for these offenses under the First Step Act. But Hudson also asked the court to reduce the 480-month sentence imposed for the firearm offense. This sentence, Hudson reasoned, was driven upward by the pre-Fair-Sentencing-Act maximum statutory penalty for one of his crack offenses.

The government did not contest that, with the maximum penalty for the crack offense lowered under the Fair Sentencing Act, the Guidelines range for Hudson's firearm offense likewise dropped (from 360 months to life imprisonment to 262–327 months' imprisonment). But the government contended that this shift doesn't matter for determining which sentences may be reduced under the First Step Act because the firearm offense is not a "covered offense," and a court may reduce a sentence only for a "covered offense."

The district court agreed. It concluded that Hudson's crack offenses qualified as "covered offenses," and imposed a

reduced total sentence of 262 months' imprisonment for those offenses. But the court determined that "there is no authority under the First Step Act that would allow me to resentence" Hudson for the firearm offense, so the court left the corresponding 480-month sentence in place. The result was that Hudson's aggregate sentence was unchanged, despite the sentence reduction on his "covered offenses."

Hudson appealed, arguing that the First Step Act permits a district court to impose a reduced sentence for non-covered offenses, like his firearm conviction, that are part of an aggregate sentence including covered offenses.

*B. David Vorties*

Similar to Hudson, in 2004, David Vorties was convicted of both a "covered" crack-cocaine offense and two "non-covered" firearms offenses.[2] The crack offense and first firearm offense (Counts I and II) each carried a Guidelines range of 292–365 months, and the second firearm offense (Count III) tacked on a mandatory 60-month consecutive term. This made Vorties's aggregate Guidelines range 352–425 months. The district court originally sentenced Vorties to the bottom of that range: 352 months' imprisonment, consisting of concurrent 292-month terms for the crack and first-firearm offenses followed by a 60-month term for the second firearm offense.

---

[2] Those offenses were: possession with intent to distribute more than 50 grams of crack (Count I), 21 U.S.C. § 841(b)(1)(A); possession of a firearm by a person convicted of a felony (Count II), 18 U.S.C. § 922(g)(1); and possession of a firearm in furtherance of a drug trafficking offense (Count III), *id.* § 924(c)(1)(A).

The Fair Sentencing Act modified the statutory penalties for Vorties's crack-cocaine offense. But that did not alter the aggregate Guidelines range for Vorties's convictions. He nevertheless asked the court to impose a reduced sentence based on considerations in 18 U.S.C. §§ 3553(a) and 3661 for determining an appropriate sentence. Specifically, he pointed to a downward shift in the statutory-minimum penalty for his crack offense, from 20 years to 10 years; and he pointed to rehabilitation and exemplary work history during his time in prison.

The district court declined to consider reducing Vorties's sentence, reasoning that the court was not "authorized" under the First Step Act to "resentence" Vorties to a below-Guidelines sentence. Vorties appealed.

*C. Thaddeus Speed*

Unlike Hudson and Vorties, Thaddeus Speed was convicted in 2008 of offenses that are all "covered" by the First Step Act: three crack-cocaine offenses.[3] But like Vorties's situation, Speed's sentence was within the Guidelines range even after the Fair Sentencing Act took effect. Speed was originally sentenced to statute-mandated life in prison. 21 U.S.C. § 841(b)(1)(A). The Fair Sentencing Act made that statutory sentence no longer applicable to Speed. Instead, a 10-years-to-life statutory range would apply along with a Guidelines range. Under the Guidelines in effect when Speed was

---

[3] These offenses were: one count of conspiring to distribute more than 50 grams of crack (Count I), 21 U.S.C. § 841(b)(1)(A), distributing more than 50 grams of crack (Count II), *id.,* and possession with intent to distribute more than 5 grams of crack (Count III), *id.* § 841(b)(1)(B).

originally sentenced, Speed qualified as a career offender, producing a Guidelines range of 360 months to life. Under today's Guidelines, however, Speed does not meet the criteria for career-offender status. In 2017, the President commuted Speed's prison sentence to 262 months.[4]

In 2019, Speed moved for First Step Act relief. Like Vorties, Speed argues that sentencing considerations under 18 U.S.C. §§ 3553(a) and 3661 warrant a reduced sentence: under the current Guidelines, Speed does not qualify as a "career offender," which means the sentence recommended for his crack offenses under the current Guidelines is much lower than when he was originally sentenced. He also argued that his rehabilitation and exemplary work history during his time in prison warrants a reduced sentence.

The district court denied Speed's request, concluding that the First Step Act did not "authorize" consideration of his arguments because his sentence remained below the Guidelines range. Speed appealed that determination.

## II. ANALYSIS

In ruling on the defendants' motions, each district court relied on an interpretation of "the authority" provided to a district court by the First Step Act. This is an issue of statutory interpretation, which we review *de novo*. *United States v. Shaw*, 957 F.3d 734, 738 (7th Cir. 2020).

In *United States v. Shaw*, we held that "if a defendant was convicted of a crack-cocaine offense that was later modified by the Fair Sentencing Act, he or she is eligible to have a court

---

[4] The government agreed that the President's commutation did not make Speed ineligible for a sentence reduction under the First Step Act.

consider whether to reduce the previously imposed term of imprisonment." 957 F.3d at 735. We also set forth several factors, grounded in 18 U.S.C. § 3553(a), that a court may consider when evaluating whether to reduce an eligible defendant's sentence under the First Step Act. *Shaw*, 957 F.3d at 741–42. Specifically, we held that the First Step Act authorizes a court to consider a range of factors to determine whether a sentence imposed is sufficient, but not greater than necessary, to fulfill the purposes of § 3553(a). These include new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct. *Id.*

Those holdings go a far way in resolving these appeals. We'll first address Hudson's case, then turn to Vorties's and Speed's.

### A. Hudson

The district court determined that the First Step Act did not permit the court to reduce Hudson's sentence for a non-covered offense that was a component of an aggregate sentence including covered offenses. In doing so, the district court faltered by collapsing the eligibility and discretionary inquiries we set out in *Shaw*.[5] First, a judge considering a motion for a reduced sentence under the First Step Act is faced with the question of whether the defendant is eligible for a sentence reduction. If the defendant is eligible, then the court faces the question of whether it *should* reduce the sentence. *Id*. at 736.

---

[5] We recognize that the district court did not have the benefit of *Shaw*'s reasoning when it considered Hudson's motion.

Here, Hudson was eligible for a sentence reduction under the First Step Act because the "statutory penalties for [his] crack-cocaine offenses had been modified by the Fair Sentencing Act." *Id*. at 735. His eligibility "to have a court consider whether to reduce the previously imposed term of imprisonment," *id.*, covers the firearm offense, because that offense was grouped with Hudson's covered offenses for sentencing, and the resulting aggregate sentence included Hudson's sentences for both the firearm and covered offenses. *Cf. United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020) (the First Step Act allows a court to reduce a sentence "where the offense of conviction is a multi-object conspiracy where the penalties of one object (possession of crack cocaine) were modified by the Fair Sentencing Act, while the penalties of the other (powder cocaine) were not reduced and independently support Gravatt's sentence"), and *United States v. Venable*, 943 F.3d 187, 193 (4th Cir. 2019) ("drug conviction under 21 U.S.C. § 841(a) falls within the First Step Act's definition of 'covered offense,' meaning that so long as he is serving any part of his sentence for that offense, he is eligible for a reduction").

This conclusion aligns with the text of the First Step Act, which says: a court that "imposed a sentence for a covered offense" may "impose a reduced sentence as if" the Fair Sentencing Act "were in effect at the time the covered offense was committed." § 404(b). That language does not bar a court from reducing a non-covered offense. The district court agreed that Hudson's crack offenses were covered offenses; and the text of the First Step Act requires no more for a court to consider whether it should exercise its discretion to reduce a single, aggregate sentence that includes covered and non-covered offenses.

Excluding non-covered offenses from the ambit of First Step Act consideration would, in effect, impose an extra-textual limitation on the Act's applicability. In Section 404(c), the Act sets forth two express limitations on its applicability. First, a court cannot consider a defendant's motion if that defendant already reaped the benefits of the Fair Sentencing Act's amendments or received the benefit of a "complete review" of a previous motion to reduce a sentence under the section 404 of the First Step Act. § 404(c). Second, Congress made clear that a court is not "require[d] … to reduce any sentence" under the Act. *Id.* If Congress intended the Act not to apply when a covered offense is grouped with a non-covered offense, it could have included that language. It did not. And "we decline to expand the limitations crafted by Congress." *Gravatt*, 953 F.3d at 264.

In addition, a court's consideration of the term of imprisonment for a non-covered offense comports with the manner in which sentences are imposed. Sentences for covered offenses are not imposed in a vacuum, hermetically sealed off from sentences imposed for non-covered offenses. Nor could they be. Multiple terms of imprisonment are treated under federal law as a single, aggregate term of imprisonment, 18 U.S.C. § 3584(c), and we've recognized "a criminal sentence is a package composed of several parts." *United States v. Litos*, 847 F.3d 906, 909 (7th Cir. 2017). Indeed, the Guidelines *require* a court to group similar offenses, U.S.S.G. § 3D1.2, and to assign a combined offense level for all counts. Sometimes, as Hudson's case demonstrates, a reduced statutory maximum for one count grouped with other offenses directly reduces

penalties for other counts.[6] Here, the Fair Sentencing Act's reduction of the statutory maximum penalty affixed to Hudson's higher-volume crack offense drastically reduces—by 100 months—the Guidelines range attached to Hudson's firearm offense.

In sum, a court is not limited under the text of the First Step Act to reducing a sentence solely for a covered offense. Instead, a defendant's conviction for a covered offense is a threshold requirement of *eligibility* for resentencing on an aggregate penalty. Once past that threshold, a court may consider a defendant's request for a reduced sentence, including for non-covered offenses that are grouped with the covered offenses to produce the aggregate sentence. Accordingly, we remand Hudson's case so the court can determine whether his aggregate term of imprisonment—including the sentence on the firearm offense—should be reduced.

---

[6] When multiple offenses have been grouped under § 3D1.2(c), the offense with the highest base offense level determines the offense level for the entire group.

Hudson was designated as a career offender under Guidelines in effect in 2003. U.S.S.G. § 4B1.1(A). A career offender's offense level is determined by the highest statutory maximum penalty for a defendant's offense of conviction. In this case, Count I included the highest statutory maximum penalty (life imprisonment), which set the offense level for all of his offenses. The career offense level for that Count was 37. The criminal-history category for a career offender is always category VI. Hudson's resulting sentencing range was 360 months to life imprisonment. With the Fair Step Act's reduced statutory maximum penalty for Count I, Hudson's career offender base offense level is now 34, resulting in a new Guidelines range of 262–327 months' imprisonment.

### B. *Vorties and Speed*

The district court in Vorties's and Speed's cases concluded that because the First Step Act did not alter the defendant's Guidelines range, the court was not permitted to reduce his sentence. We disagree.

As in Hudson's case, because Vorties and Speed were each convicted of covered offenses, they are eligible to have the district court consider whether to reduce their entire term of imprisonment. This is true even if a defendant's Guidelines range has not changed.

Nothing in the text of the First Step Act requires the Guidelines range to have changed for a court to *consider* whether to reduce an aggregate term of imprisonment. Instead, when a defendant is *eligible* for a sentence reduction—as Vorties and Speed are—a district court may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act. These factors include different statutory penalties, current Guidelines, post-sentencing conduct, and other relevant information about a defendant's history and characteristics. *Shaw*, 957 F.3d at 741–42.

As we explained in *Shaw*, utilizing 18 U.S.C. § 3553(a)'s familiar framework in considering a motion under the First Step Act "makes good sense." *Id.* at 741. Without mandating a particular set of procedures, we noted relevant factors a court could consider when determining whether a sentence is "'sufficient, but not greater than necessary,' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.* (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)). And we determined that nothing in the First Step Act precludes a court from looking at § 3553(a) factors with an eye toward current

Guidelines. *Id.* Finally, we remarked that a defendant's conduct after sentencing is "plainly relevant" to a defendant's rehabilitation, characteristics, and the sufficiency of a sentence imposed. *Id*. Vorties and Speed urged the district court to assess their arguments related to these factors.

Vorties argued that the Fair Sentencing Act halved the statutory minimum penalties—from 20 years to 10 years—attached to his crack offenses involving more than 50 grams of crack. *See* 21 U.S.C. § 841(b)(1)(A)–(B). Speed made the same argument. Because "the statutory minimum and maximum often anchor a court's choice of a suitable sentence," *Shaw*, 957 F.3d at 742, a change from 20 years to 10 years in the minimum penalty unmoors an anchor in a court's decision to select a suitable sentence. *Cf. United States v. Smith*, 954 F.3d 446, 451 (1st Cir. 2020) ("The change in § 841(b)(1)(C)'s upper bound is no small point, even for defendants guilty of distributing less than five grams of crack, because the statutory benchmarks likely have an anchoring effect on a sentencing judge's decision making."). It is thus an appropriate consideration for a court evaluating whether to impose a reduced sentence.

As for differences between previous and current Guidelines, Speed pointed to a change in his career-offender status. When he was sentenced in 2010, he was considered a career offender because of a previous residential-burglary conviction. As a result, he faced a Guidelines range of 360 months to life in prison. In 2016, the Sentencing Commission removed residential burglary from the list of crimes that lead to a career-offender designation. *See* U.S.S.G. § 4B1.2(a)(2), app. C, amend. 798 (2016). So, Speed would not be a career offender under today's Guidelines; and without a career-offender designation, his Guidelines range would be 168–210 months'

imprisonment. Speed asked the district court to take this change into consideration. The First Step Act does not prevent the court from considering this change when deciding whether the sentence imposed is "sufficient, but not greater than necessary," under 18 U.S.C. § 3553(a). As we remarked in *Shaw*, "today's Guidelines may reflect updated views about the seriousness of a defendant's offense or criminal history." 957 F.3d at 742; *see also United States v. Harris*, 960 F.3d 1103, 1106 (8th Cir. 2020) ("[T]he § 3553(a) factors in First Step Act sentencing may include consideration of the defendant's advisory range under the current guidelines."); *Smith*, 954 F.3d at 452 n.8.

Finally, Speed and Vorties asked the district court to consider their post-sentencing conduct. Speed pointed to a minimal disciplinary history in prison and commendable initiative to better himself. For example, he voluntarily joined the Psychology Services Suicide Watch Companion Team at the prison where he resides. This team is made up of inmates who have demonstrated "superior institutional adjustment," "maturity," "responsibility," and "commitment to the well-being of fellow inmates"; who provide visual supervision of inmates placed on suicide watch; and who respond to potentially life-threatening emergencies. Speed also consistently enrolled in education courses, including drug education and abuse courses, and earned his GED in 2012. Vorties, too, relied on post-sentencing conduct. For example, he incurred only two minor disciplinary infractions over the fifteen years he has been incarcerated. And "he found his niche" in the prison-industries program, where he has been employed since 2007, with supervisors describing him as a "dependable" worker who "requires little to no supervision, and is good at his job."

The district court is authorized to consider this post-sentencing conduct. The conduct is relevant to Speed's and Vorties's criminal history and characteristics; it is pertinent to the need for the sentence imposed; and it can inform a court in carrying out its duty to impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a).[7] *Shaw*, 957 F.3d at 741 (quoting *Pepper*, 562 U.S. at 491); 18 U.S.C. § 3661.

In sum, the First Step Act does not prevent a court from considering updated statutory benchmarks, current Guidelines, and post-sentencing conduct when determining whether a reduced sentence is merited. *Shaw*, 957 F.3d at 741. The district court did not address these arguments because it determined the First Step Act did not authorize their assessment.[8] We accordingly remand these cases for the court to do so and to determine whether Vorties's and Speed's sentences should be reduced.

### III. CONCLUSION

Because each defendant was eligible for a sentence reduction under the First Step Act, and because the district courts may reduce sentences for both non-covered offenses grouped

---

[7] On that note, we flag the district court's distinction between "resentencing" and a "sentence reduction" in reaching the conclusion that there is "no real argument to be made here—short of resentencing as opposed to sentence reduction—to go below [his original] guideline range." The district court in *Shaw* also relied on this distinction. We reiterate our conclusion that "the First Step Act does not include the limitations particular to [18 U.S.C.] § 3582(c)(2)." *Shaw*, 957 F.3d at 743.

[8] As with the district court in Hudson's case, we recognize that the district court in Vorties's and Speed's cases did not have the benefit of *Shaw* when addressing their motions for a reduced sentence.

with a covered offense and covered offenses for which the Guidelines range has not changed, we REVERSE and REMAND for review and rulings consistent with this opinion.