# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 15, 2020       Decided December 29, 2020

No. 19-3058

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTONE WHITE, ALSO KNOWN AS TONE,
APPELLANT

Consolidated with 19-3059

Appeals from the United States District Court
for the District of Columbia
(No. 1:93-cr-00097-1)
(No. 1:93-cr-00097-2)

*A. J. Kramer*, Federal Public Defender, argued the cause and filed the briefs for appellants.

*Elizabeth Gabriel*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Timothy J. Shea*, U.S. Attorney, and *Elizabeth Trosman* and *John P. Gidez*, Assistant U.S. Attorneys.

Before: TATEL and GARLAND[*], *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: The Fair Sentencing Act of 2010 raised the crack-cocaine threshold quantities for triggering certain penalty ranges for convictions under 21 U.S.C. § 841. However, the modifications to section 841 did not apply to defendants who were sentenced before enactment of the Fair Sentencing Act. This was changed with the passage of the First Step Act of 2018. Section 404 of that Act allows persons to seek reduced sentences if they committed certain "covered offense[s]" under section 841 prior to the enactment of the Fair Sentencing Act. The First Step Act was "intended to rectify disproportionate and racially disparate penalties" in federal sentencing. *United States v. Boulding*, 960 F.3d 774, 782 (6th Cir. 2020).

A "covered offense" under the First Step Act is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . ., that was committed before August 3, 2010." First Step Act § 404(a). "A court that imposed a sentence for a covered offense may, [pursuant to a proper motion], impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* § 404(b). However, a district court may not "entertain a motion" for a defendant who has already had his sentence imposed or reduced "in

---

[*] Judge Garland was a member of the panel at the time this case was argued but did not participate in the final disposition of the case.

accordance with" sections 2 or 3 of the Fair Sentencing Act. *Id.* § 404(c). Nor may a district court "entertain a motion" if a previous section 404 motion on behalf of the same defendant was denied "after a complete review of the motion on the merits." *Id.*

Appellants in this case, Antone White and Eric Hicks, were convicted in 1994 of drug and conspiracy offenses. It was not until the passage of the First Step Act that defendants like White and Hicks could seek reduced sentences. In April and May 2019, Hicks and White filed motions for reduced sentences under section 404 of the First Step Act. The District Court denied White's motion and partially denied Hicks's motion. *See United States v. White*, 413 F. Supp. 3d 15, 53 (D.D.C. 2019). Appellants filed timely appeals to challenge the judgments of the District Court. We now reverse and remand.

The District Court held that if a defendant was convicted of a "covered offense" and is thus eligible for relief under section 404, "the final issues to address are whether relief is available and, if so, to what extent a sentence reduction is warranted as a matter of discretion." *Id.* at 48. This was error because, as we explain below, there is no additional "availability" requirement in section 404 beyond the covered offense requirement in section 404(a) and the limitations set forth in section 404(c). In the alternative, the District Court held that, even if relief might be available, it would not exercise its discretion to reduce Appellants' sentences, save for one of Hicks's counts. However, in reaching this alternative judgment, it is unclear whether the court properly weighed the factors listed in 18 U.S.C. § 3553(a). And there is nothing to indicate that the District Court weighed the mitigating factors raised by Appellants, including Appellants' post-sentencing conduct. This "silence leaves us without assurance that the district court *considered* [Appellants'] arguments." *United*

*States v. Shaw*, 957 F.3d 734, 742 (7th Cir. 2020). Finally, it appears that the court relied on inaccurate information in weighing the claims raised by Hicks. Given these issues, we will remand the case with instructions to the District Court to reconsider Appellants' motions.

Assessments of motions under section 404 must take account of Congress's intent to rectify disproportionate and racially disparate sentencing penalties. Appellants have raised claims that are obviously within the remedial compass of the First Step Act, and they cannot file new motions if their current section 404 claims are denied "on the merits." First Step Act § 404(c). It is therefore important that they be given full and fair hearings on their claims to ensure that the goals of the Act are met.

## I. BACKGROUND

### A. Statutory Background

Federal drug-offense penalties vary based on the quantity and type of drugs involved in an offense. *See* 21 U.S.C. § 841(b). The Anti-Drug Abuse Act of 1986 set forth three quantity-based penalty ranges: 10 years to life in prison, 5 to 40 years in prison, and up to 20 years in prison. Pub. L. No. 99-570, 100 Stat. 3207, 3207-2 to 3207-4. The act "treated crack cocaine crimes as far more serious" than powder cocaine crimes, "impos[ing] upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one one-hundredth that amount of crack cocaine." *Dorsey v. United States*, 567 U.S. 260, 263, 266 (2012).

As noted above, in 2010, Congress passed the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372 (2010), which reduced the disparity between cocaine base and powder

cocaine from 100-to-1 to 18-to-1. *Dorsey*, 567 U.S. at 264. Section 2 of the Act increased the threshold quantity for the "10 years to life" penalty range from 50 grams of crack cocaine to 280 grams, *see* Fair Sentencing Act § 2 (codified at 21 U.S.C. § 841(b)(1)(A)(iii)), and the threshold quantity for the "5 to 40 years" penalty range from 5 grams of crack cocaine to 28 grams, *see id.* (codified at 21 U.S.C. § 841(b)(1)(B)(iii)). As a result of these changes, offenses involving less than 28 grams of crack cocaine now carry a statutory maximum term of 20 years imprisonment, with no mandatory minimum penalty. *See* 21 U.S.C. § 841(b)(1)(C). The Fair Sentencing Act's new penalty regime, however, offered only limited redress because it did not apply to defendants sentenced prior to August 3, 2010. *United States v. Swangin*, 726 F.3d 205, 207 (D.C. Cir. 2013).

The Seventh Circuit has aptly noted that:

[The Fair Sentencing Act] reflected a recognition that the tremendous disparities in punishment of powder-cocaine and crack-cocaine offenses disparately impacted African Americans.

But the Fair Sentencing Act's changes to the sentencing scheme applied only to defendants who were sentenced after the law's enactment on August 3, 2010, leading us to comment that the Act might more accurately be known as "The Not Quite as Fair as it could be Sentencing Act of 2010."

Congress eventually addressed this deficiency when it passed the First Step Act of 2018.

*Shaw*, 957 F.3d at 737 (citations omitted).

In 2018, Congress passed the First Step Act. Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 404 of the Act allows certain individuals sentenced prior to enactment of the Fair Sentencing Act to seek a retroactively reduced sentence. *Id.* § 404. The section states in full:

SEC. 404. APPLICATION OF FAIR SENTENCING ACT.

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.

> Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.*

### B. Factual Background

Appellants participated in a drug trafficking organization from 1988 until 1993. *See United States v. White*, 116 F.3d 903, 909 (D.C. Cir. 1997). They were arrested and charged with, *inter alia*, conspiracy to distribute 50 grams or more of cocaine base (Count 1), Racketeer Influenced and Corrupt Organization ("RICO") conspiracy (Count 5), distribution of five grams or more of a substance containing crack cocaine (Count 18 for White and Count 11 for Hicks), and distribution of a substance containing a detectable amount of crack cocaine (Counts 8 and 10 for Hicks and Counts 6 and 7 for White). Following trial, the jury returned verdicts against White and Hicks finding them guilty of these counts. However, the jury did not indicate any additional drug weights on the verdict form.

At sentencing, the trial judge determined the statutory penalties using drug quantities found by the preponderance of the evidence. *See United States v. Fields*, 242 F.3d 393, 395-96 (D.C. Cir.) (describing sentencing practices prior to *Apprendi v. New Jersey*, 530 U.S. 466 (2000)), *reh'g granted on other grounds*, 251 F.3d 1041 (D.C. Cir. 2001). White's presentence investigation report ("PSR") stated that the amounts of crack cocaine involved in his offenses were 21.87 kilograms for Count 1 (the conspiracy count), 3.607 grams for Count 6, 3.682 grams for Count 7, and 49.99 grams for Count 18. Accordingly, the PSR identified the following statutory penalties:

- Count 1: 10 years to life imprisonment for drug conspiracy under 21 U.S.C. § 846 and § 841(b)(1)(A)(iii);

- Count 5: maximum of life imprisonment under 18 U.S.C. § 1962(d) and § 1963;

- Counts 6 and 7: maximum of 20 years imprisonment under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C); and

- Count 18: 5 to 40 years imprisonment under 21 U.S.C. § 841(b)(1)(B)(iii).

White's counts were grouped pursuant to section 3D1.2(d) of the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), with a base offense level of 42 due to the amount of crack involved. This base offense level was increased for possession of a dangerous weapon, a leadership role, and obstruction of justice. Given his final offense level and criminal history, White's mandatory Guidelines range was life.

The court sentenced White to life imprisonment on Counts 1 and 5, 240 months on Counts 6 and 7, and 480 months on Count 18, all to run concurrently, to be followed by 5 years of supervised release on each count, to run concurrently.

Hicks's PSR stated that the actual amounts of crack cocaine involved in his offenses were: 21.87 kilograms for Count 1 (the conspiracy count), 0.109 grams for Count 8, 0.433 grams for Count 10, and 5.426 grams for Count 11. The PSR identified the following statutory penalties:

- Count 1: 10 years to life imprisonment for drug conspiracy under 21 U.S.C. § 846 and § 841(b)(1)(A)(iii);

- Count 5: maximum of life imprisonment under 18 U.S.C. § 1962(d) and § 1963;

- Counts 8 and 10: maximum of 20 years imprisonment under 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C); and

- Count 11: 5 to 40 years imprisonment under 21 U.S.C. § 841(b)(1)(B)(iii).

Hicks's base offense level was also 42. This offense level was increased for possession of a dangerous weapon, leadership, obstruction of justice, and recklessly creating a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer. Given his final offense level and criminal history, Hicks's mandatory Guidelines range was life.

The District Court sentenced Hicks to life imprisonment on Counts 1 and 5, 240 months on Counts 8 and 10, and 480 months on Count 11, all to run concurrently, followed by 5 years of supervised release on each count, to run concurrently.

## C. Procedural History

In 2019, Appellants filed motions for sentence reductions under section 404 of the First Step Act. Each argued he was eligible for relief under section 404 because he had been convicted of "covered offense[s]" for which the statutory penalties had been amended by the Fair Sentencing Act, and the limitations in section 404(c) did not apply. Each requested that the District Court exercise discretion under section 404(b)

to impose a sentence of time served. Appellants asked the court to consider the 18 U.S.C. § 3553(a) sentencing factors and provided the court with information about the mitigating circumstances of their youth and their accomplishments during imprisonment.

The Government argued that Appellants were not eligible for sentence reductions because their offenses were not "covered offenses" under section 404(a). The Government contended that a "covered offense" is determined by looking at the "actual quantity" of drugs involved in a defendant's offense, rather than by referencing the statute of conviction. *See* United States' Opp'n to Def.'s Emergency Suppl. Mot. to Reduce Sentence at 15, Appendix for Appellants ("App.") 443; Gov't's Opp'n to Def.'s Emergency Suppl. Mot. to Reduce Sentence Pursuant to the First Step Act of 2018 at 16, App. 654. The Government further argued that, even if Appellants were eligible for sentence reductions, the court should exercise its discretion under section 404(b) to deny relief due to Appellants' crimes of conviction and disciplinary records while in prison.

The District Court denied White's motion and denied in part and granted in part Hicks's motion. *White*, 413 F. Supp. 3d at 19. The court first held that a defendant has a "covered offense" under section 404(a) if sections 2 or 3 of the Fair Sentencing Act modified the penalties applicable to the defendant's statute of conviction, regardless of the actual drug quantity attributable to the defendant. *See id.* at 33, 36, 38. The District Court thus found that Appellants were sentenced for "covered offenses" and were eligible for relief under section 404(a). *Id.* at 31, 38.

However, the District Court found that relief was not "available" to Appellants under section 404(b), except as to

Count 11 for Hicks. *Id.* at 48. The court explained that the Fair Sentencing Act would have had no effect on Appellants' sentences for Counts 1, 5, and 18, based on the judge-found quantities of crack cocaine attributed to Appellants for those counts. *See id.* at 48-50. The court also noted that under this reasoning, Appellants' Guidelines ranges would remain unchanged. *Id.* at 51.

In the alternative, the District Court ruled that "[e]ven if [a]vailable," relief would not be warranted for any counts except Hicks's Count 11. *Id.* at 51. In reaching this judgment, the court focused on White's offense, obstruction of justice, and disciplinary violations while imprisoned. *Id.* at 51-52. The court did not mention any mitigating information relating to White. *Id.* In considering Hicks, the court focused on his offense, flight from police officers, and what the court described as "obstructive conduct, bribing another First Street Crew member to withhold information from the grand jury that was investigating him for murder." *Id.* at 52. The court did not mention any mitigating information relating to Hicks. *Id.* The court granted Hicks's request for a time-served sentence on Count 11, and otherwise denied Appellants' motions. *Id.* at 53.

Appellants filed timely notices of appeal. After briefing in this case was complete, the Government submitted a letter "conced[ing] that appellants' offenses [are] 'covered offenses'" under Section 404(a) of the First Step Act. Letter from Michael R. Sherwin, Acting United States Attorney, U.S. Dep't of Justice, to Mark J. Langer, Clerk, U.S. Court of Appeals for the D.C. Circuit (Oct. 5, 2020) ("28(j) Letter"). The Government also disagreed with the District Court's conclusion "that relief [is] unavailable to appellants under [s]ection 404(b) because of the actual quantity of crack cocaine involved in their offenses." *Id.* Instead, the Government argued that the District Court's judgment should be affirmed because

the District Court had made it clear that it would not grant discretionary relief to Appellants even if such relief were available.

## II. ANALYSIS

### A. Standard of Review

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court instructed that "the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions." *Id.* at 49. Our sister circuits have applied the abuse-of-discretion standard of review in appeals challenging denials of sentence reductions under section 404 of the First Step Act. For example, the Fifth Circuit has explained "that abuse of discretion generally applies [in such situations], because the [First Step Act] gives the district court broad discretion in deciding whether to resentence." *United States v. Jackson*, 945 F.3d 315, 319 (5th Cir. 2019); *see also Boulding*, 960 F.3d at 778. But even in the sentencing context, "[w]e review questions of statutory construction <u>de novo</u>." *Young v. United States*, 943 F.3d 460, 462 (D.C. Cir. 2019) (citation omitted); *see also Jackson*, 945 F.3d at 319 ("But to the extent the court's determination turns on 'the meaning of a federal statute' such as the [First Step Act], our review is *de novo*." (quoting *United States v. Hegwood*, 934 F.3d 414, 417 (5th Cir. 2019)). We will follow our sister circuits and apply the same standard in our review of section 404 motions. We also note that if the District Court fails to adequately explain its denial of a motion for a reduced sentence, the case must be remanded for further consideration by the trial court in the first instance. *Shaw*, 957 F.3d at 742; *see also Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018).

**B. "Covered Offense[s]" Under Section 404(a)**

Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . ., that was committed before August 3, 2010." First Step Act § 404(a). Section 2(a) of the Fair Sentencing Act modified 21 U.S.C. § 841. Fair Sentencing Act § 2(a). In this context, then, a "covered offense" is any violation of 21 U.S.C. § 841, or conspiracy to violate 21 U.S.C. § 841, that was committed before August 3, 2010 and for which the statutory penalties were modified by the Fair Sentencing Act.

The three counts on appeal all fit this description. Under Counts 1 and 5, Appellants were convicted of conspiracies to violate 21 U.S.C. § 841 involving 50 grams or more of cocaine base, the amount then specified in section 841(b)(1)(A). Under Count 18, White was convicted of a violation of 21 U.S.C. § 841 that involved 5 grams or more of cocaine base, the amount then specified in 841(b)(1)(B). Section 2(a) of the Fair Sentencing Act modified the statutory penalties for these counts because it changed the quantity of crack cocaine necessary to trigger the penalties for those violations.

Thus, whether an offense is "covered" does not depend on the actual drug amounts attributed to a defendant, whether by a judge or a jury. Rather, it depends only on whether the defendant was convicted of an offense with a statutory penalty range that the Fair Sentencing Act altered. The Government agrees with this categorical approach. *See* 28(j) Letter; *see also United States v. Jones*, 962 F.3d 1290, 1301 (11th Cir. 2020) ("The actual drug-quantity involved in the movant's offense is irrelevant as far as . . . the offense [is] concerned." (emphasis omitted)). Appellants' convictions all involved "covered offense[s]" under section 404(a).

Furthermore, as noted above, neither of the express limitations in section 404(c) apply here. That provision prevents the court from "entertain[ing] a motion" made by a defendant who filed a prior First Step Act motion that was denied on the merits, or whose sentence was already imposed or reduced in accordance with sections 2 or 3 of the Fair Sentencing Act. *See* First Step Act § 404(c). Neither Appellant is affected by these limitations.

We note that Appellants were also convicted of the charges in Counts 6, 7, 8, and 10, which involved violations of 21 U.S.C. § 841 that triggered the penalty provision in section 841(b)(1)(C). These charges appear to be covered offenses. However, they were not raised as part of this appeal, so we will not address Counts 6, 7, 8, and 10.

### C. The Scope of Relief Under Section 404(b)

Section 404(b) permits a "court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). For a court to impose a sentence "as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect," the court must use the revised penalty range now applicable to the drug amount in the original statute of conviction. Furthermore, any new sentence must be "reduced" from the existing sentence.

In this case, Appellants were convicted of a conspiracy to distribute at least 50 grams of cocaine base for Counts 1 and 5, and White was additionally convicted of distributing at least 5 grams of cocaine base for Count 18. Given the modified penalty ranges provided by the Fair Sentencing Act, the District

Court therefore had discretion to impose reduced sentences as low as 5 years for Counts 1 and 5, and 0 years for Count 18.

The District Court construed section 404(b) incorrectly. The court held that section 404(b)'s authorization to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect" means that relief is categorically barred unless, using defendant-specific drug quantities, the Fair Sentencing Act would have altered the statutory penalties applicable to a defendant. *See White*, 413 F. Supp. 3d at 50 ("[I]f [section 2 or 3 of the Fair Sentencing Act] have no effect on a defendant's sentence, no sentence reduction is available to award."). In other words, the District Court held that relief is "available" under section 404(b) only if the Fair Sentencing Act "would have had an effect on a defendant's sentence" as calculated using the specific drug quantity attributable to a defendant. *Id.* at 48. We hold that section 404(b) does not create such an availability test.

The District Court's limitation has no basis in the text of section 404(b). The plain language of section 404(b) does not require the court to determine what effect the Fair Sentencing Act "would have had" on a defendant's sentence at the time it was originally imposed. Rather, it simply authorizes the district court to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed." First Step Act § 404(b).

A court cannot determine, using judge- or jury-found drug quantities, what effect the Fair Sentencing Act "would have had" on a defendant's sentence. As the Third Circuit explained in the context of section 404(a):

> If § 404 eligibility is based on drug quantity, a court would have to speculate as to how a charge, plea, and

> sentencing would have looked had the Fair Sentencing Act been in effect. Such an analysis is problematic because it cannot account for the discretionary authority of either a prosecutor or a court. Plea negotiations and colloquies are conducted against the backdrop of the statutory minimum and range.

*United States v. Jackson*, 964 F.3d 197, 205 (3d Cir. 2020) (citation omitted); *see also United States v. Johnson*, 961 F.3d 181, 192 (2d Cir. 2020) (rejecting the "assumption that there *is* a knowable set of pre-Fair Sentencing Act defendants who would have received the same sentence regardless of the Fair Sentencing Act" because, had the statutory penalty ranges been different, defendants might not have been indicted or convicted for the same drug amount).

Furthermore, "statutory benchmarks likely have an anchoring effect on a sentencing judge's decision making." *United States v. Smith*, 954 F.3d 446, 451 (1st Cir. 2020). The First Step Act provides relief even where the penalty range applicable to a defendant's specific drug amount – whether judge-found or jury-found – would remain the same after application of the Fair Sentencing Act. *See United States v. Woodson*, 962 F.3d 812, 817 (4th Cir. 2020) ("[E]ven defendants whose offenses remain within the same subsection after Section 2's amendments are eligible for relief."); *Jackson*, 964 F.3d at 205 ("It seems incongruent with the historical context of the First Step Act for Congress to have intended § 404 to apply only to the select pre-Fair Sentencing Act defendants whose quantities fell between the old and new threshold amounts."). If a defendant committed a "covered offense" under section 404(a) and neither of the limitations in section 404(c) apply, relief under section 404(b) is available even if the Fair Sentencing Act did not modify the statutory

range for the specific drug quantity attributed to the defendant. *See Woodson*, 962 F.3d at 817. The Government agrees that relief cannot be made "unavailable to appellants under [s]ection 404(b) because of the actual quantity of crack cocaine involved in their offenses." 28(j) Letter.

Likewise, the District Court was also incorrect to assume that relief was available only if the Fair Sentencing Act would have changed the Guidelines range, as determined by the specific quantity attributed to a defendant. *See White*, 413 F. Supp. 3d at 51. "Nothing in the text of the First Step Act requires the Guidelines range to have changed for a court to *consider* whether to reduce an aggregate term of imprisonment." *United States v. Hudson*, 967 F.3d 605, 611 (7th Cir. 2020); *see also Jones*, 962 F.3d at 1305 (remanding because district court opinion was unclear "as to whether the district court understood its authority to reduce [the defendant's] sentence below the revised guideline range"); *United States v. Beamus*, 943 F.3d 789, 792 (6th Cir. 2019).

On the record before us in this case, the District Court clearly had discretion to grant Appellants relief under section 404. The court may consider both judge-found and jury-found drug quantities as part of its exercise of discretion. *See United States v. Ware*, 964 F.3d 482, 488-89 (6th Cir. 2020). But the court may not deem relief categorically unavailable due to defendant-specific drug quantities.

**D. The District Court's Obligation to Exercise Discretion with Respect to Motions Seeking a Sentence Reduction Under Section 404**

**1.** *Exercising Discretion Under Remedial Statutes*

Section 404 is clear as to when relief is *permitted*, but it does not give precise directions as to when a motion for reduced sentence *should* be granted. Instead, the First Step Act gives the district court discretion to make the latter determination. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). If a defendant is eligible for a sentence reduction, "then the court faces the question of whether it *should* reduce the sentence." *Hudson*, 967 F.3d at 610 (citation omitted). The District Court has broad discretion to assess motions for sentence reductions, but it is important to note that the court does not have unfettered authority.

It is well understood that "[t]he deference afforded discretionary decisions, even those that are largely unconstrained by statutory language or judicial precedent, does not mean that such decisions are 'unfettered by meaningful standards or shielded from thorough appellate review.' *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975); *see also United States v. Taylor*, 487 U.S. 326, 336 (1988). 'In a system of laws discretion is rarely without limits, even when the statute [conferring it] does not specify any limits upon the district courts' discretion.' *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931–32 (2016). 'Without governing standards or principles, . . . [statutes that seemingly grant open ended discretion] threaten to condone judicial "whim" or predilection.' *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). . . . And judicial discretion based on whim is something our system does not tolerate. *See Halo*, 136 S. Ct.

at 1931. '[A] motion to a court's discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles.' *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005) (quoting *United States v. Burr*, 25 F.Cas. 30, 35 (No. 14,692d) (CC Va. 1807) (Marshall, C.J.)); *see also Halo*, 136 S. Ct. at 1932 (quoting *Burr* for the same proposition); *Taylor*, 487 U.S. at 336 (same); *Albemarle Paper Co.*, 422 U.S. at 416 (same)." EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW 84-85 (3d ed. 2018) (first through fourth and sixth alterations in original).

The Supreme Court has instructed that when a statute does not specify any limits on the district court's discretion, we must look to the purpose of the statute to determine whether to sustain the trial court judge's exercise of discretion. A good example of this is seen in the Court's decision in *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975). In that case, the district court judge found that the defendants had discriminated against the plaintiffs in violation of Title VII of the Civil Rights Act, and consequently granted injunctive relief. *Id.* at 408-09. However, the court refused the plaintiffs' request for backpay. *Id.* at 410. The court of appeals reversed, holding that "a plaintiff . . . who is successful in obtaining an injunction under Title VII . . . should ordinarily be awarded back pay unless special circumstances would render such an award unjust." *Id.* at 412 (citation omitted). Before the Supreme Court, the petitioning defendants argued that the district court's backpay decision should not have been overturned, since "the statutory scheme provides no guidance, beyond indicating that backpay awards are within the District Court's discretion." *Id*. at 415. Looking to the purpose of Title VII, its legislative history, and analogous statutes, the Supreme Court rejected the defendants' argument. *Id.* at 415-22. What the Court said in *Albemarle* about discretionary authority is illuminating:

[The Court] concluded that "[t]he power to award backpay was bestowed by Congress, as part of a complex legislative design directed at a historic evil of national proportions." And the equitable nature of the remedial power did not excuse the district court from exercising it "in light of the large objectives of the Act." "Congress' purpose in vesting a variety of [remedial] discretionary powers in the courts was not to limit appellate review of trial courts, or to invite inconsistency and caprice, but rather to make possible the fashioning of the most complete relief possible." "It follows," the Court reasoned, "that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination."

EDWARDS & ELLIOTT, FEDERAL STANDARDS OF REVIEW 88 (citations omitted). We are obliged to follow the Court's guidance in *Albemarle* in setting guideposts for the District Court's exercise of discretion under the First Step Act.

## 2. *The Purposes Underlying the Fair Sentencing Act and the First Step Act*

We believe that any review of a district court's exercise of discretion under the First Step Act must take into account Congress's purposes in passing the Fair Sentencing Act (which reduced the 100-to-1 sentencing disparity between crack and powder cocaine) and the First Step Act (which allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act). First and foremost, it is clear that "[t]he First Step Act is a remedial

statute intended to correct earlier statutes' significant disparities in the treatment of cocaine base (also known as crack cocaine) as compared to powder cocaine." *United States v. Wirsing*, 943 F.3d 175, 176-77 (4th Cir. 2019).

Congress obviously meant to reduce sentencing disparities in the federal courts. However, in passing the First Step Act, "Congress [also] authorized the courts to *provide a remedy for certain defendants who bore the brunt of a racially disparate sentencing scheme*." *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020) (emphasis added). In other words, "Congress intended to rectify disproportionate and racially disparate penalties even where juries could have been asked to find higher drug quantities." *Boulding*, 960 F.3d at 782; *see also* 164 CONG. REC. S7021 (daily ed. Nov. 15, 2018) (statement of Sen. Dick Durbin) (describing the same bill as an opportunity "to give a chance to thousands of people who are still serving sentences for nonviolent offenses involving crack cocaine under the old 100-to-1 rul[e] to petition individually" for a sentencing reduction); 164 CONG. REC. S7764 (daily ed. Dec. 18, 2018) (statement of Sen. Cory Booker) ("Making this fix in this bill alone will mean that thousands of Americans who have more than served their time will become eligible for release, and it addresses some of the racial disparities in our system because 90 percent of the people who will benefit from that are African Americans; 96 percent are Black and Latino.").

In short, the Fair Sentencing Act and First Step Act, together, are strong remedial statutes, meant to rectify disproportionate and racially disparate sentencing penalties. It is not incongruous that the statutes offer the possibility of remedial action for persons who were convicted of criminal conduct. Congress determined that persons who are eligible for sentence reductions under the First Step Act were likely victims of unfair and racially discriminatory treatment in our

criminal justice system. Therefore, the affected defendants are serving sentences that Congress now deems unfair. The First Step Act "make[s] possible the fashion[ing] [of] the most complete relief possible." *Albemarle*, 422 U.S. at 421 (second and third alterations in original) (citation omitted). This is no small matter.

### 3. *Reviewing an Exercise of Discretion Under Section 404 of the First Step Act*

Given the important goals of the statute, we agree with the recent decision in the Seventh Circuit that "a district court may consider all relevant factors when determining whether an eligible defendant merits relief under the First Step Act." *Hudson*, 967 F.3d at 611. The court explained that:

> the First Step Act authorizes a court to consider a range of factors to determine whether a sentence imposed is sufficient, but not greater than necessary, to fulfill the purposes of § 3553(a). These include new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct.

*Id*. at 609 (citation omitted). We agree.

In particular, we strongly concur in the court's holding that "[t]he district court is authorized to consider . . . post-sentencing conduct. The conduct is relevant to [Appellants'] criminal history and characteristics; it is pertinent to the need for the sentence imposed; and it can inform a court in carrying out its duty to impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)." *Id.* at 613 (citing *Shaw*, 957 F.3d at 741); *see also*

18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

Every circuit court that has examined the issue has held that a district court may, or must, consider the 18 U.S.C. § 3553(a) sentencing factors when passing on a motion for relief under section 404 of the First Step Act. *See, e.g.*, *Boulding*, 960 F.3d at 784; *United States v. Easter*, 975 F.3d 318, 323-26 (3d Cir. 2020); *Jackson*, 945 F.3d at 322 n.7. Those factors include consideration of the defendant's post-sentencing behavior. *See Hudson*, 967 F.3d at 612. In a case with a record of this complexity, we think it is especially important that the District Court consider the section 3553(a) sentencing factors when passing on a motion for relief under section 404. In addition, "[w]hile district courts have wide discretion in the First Step Act context, the resentencing decision must be procedurally reasonable and supported by a sufficiently compelling justification." *Boulding*, 960 F.3d at 784 (citation omitted). Nothing less is sufficient to meet the goals of the Fair Sentencing Act and the First Step Act to provide a remedy for defendants who bore the brunt of a racially disparate sentencing scheme.

### 4. *Relevant Factors Not Addressed by the District Court*

In assessing Appellants' motions for resentencing, the District Court in this case focused primarily on the crimes that Appellants committed almost 30 years ago. Their past misdeeds are not irrelevant. Although criminal convictions are a given in any motion for resentencing under section 404 of the First Step Act, they are not the whole story.

Appellants raised several reasonable mitigation arguments before the District Court in support of their motions for sentence reductions. What they offered paints a very different picture than the portrayal of Appellants in the District Court's opinion.

Appellant White was born to a 15-year-old mother who suffered from drug addiction and was incarcerated during his adolescence. Br. for Appellants at 7. His father had been in and out of prison his entire life. *Id.* White was sentenced when he was only 21. *Id.* at 13. He is now 47 years old and has been imprisoned for 27 years. *Id.* While incarcerated, White has earned his GED and taken more than 85 classes. App. 383-84. He has had no disciplinary incidents in the past 4.5 years. *See* App. 377. The District Court opinion found notable that White's disciplinary record included violent infractions, of which "the most recent occur[ed] 10 years ago." 413 F. Supp. 3d at 52 (citation omitted). Equally notable, in our view, is the fact that Appellant has incurred no violent infractions in the past ten years.

White also provided the District Court with numerous letters of support from family, friends, and individuals that White has mentored while in prison. *See, e.g.*, App. 402 (describing how several incarcerated individuals felt that "if they had met [White] in our society . . . his mentorship would have changed their paths"); App. 404 ("We need men like Antone back in our communities to do for others what he has done for me; inspire me, uplift me, challenge me and never give up."); App. 399 (stating that White "consistently made himself available to support" efforts to "teach[] effective conflict resolution to youth and young adults"); App. 393 (explaining that White "made an enormous impression" on two incarcerated individuals and was "instrumental in helping them

obtain their GED's"); App. 390 (offering to provide White with "immediate employment, housing, and emotional support" upon release).

Appellant Hicks's parents disappeared when he was five years old. Br. for Appellants at 8. Hicks was sentenced at the age of 24. *Id.* at 15. He is now 50 years old and has been imprisoned for 27 years. *Id.* at 16. Hicks has had no disciplinary reports in the past 10 years and only five reports in total, none involving drugs or violence. App. 612. He obtained his paralegal certificate with an A+ average. App. 615. Hicks submitted a letter to the court explaining that he "sincerely cares about paying his debt to society" and "striv[es] to make amends." App. 609. To that end, Hicks and other incarcerated individuals started an organization, Project D.A.D. ("Donate-A-Dollar") that raises money from inmates and gives it to the community to "illustrate to the people in the community that we care about the problems that they endure." App. 619; Br. for Appellants at 16.

Furthermore, Hicks has maintained strong relationships with his family and friends, including with his wife. *See* App. 623-36; *see also* App. 632 ("Hicks has played an instrumental role in my life and the lives of our Sons and that of our family and close friends."); App. 635 ("He has missed out on so much of his life and I think it's time for him to return home before there is no family left."). Hicks has tutored and mentored his fellow inmates, acting as an important role model. *See* App. 624-630; *see also* App. 624-25 (explaining that Hicks was "instrumental in helping to change [a fellow inmate's] life" and that "EVERYONE looks up to [Hicks] as a role model"); App. 625 ("If anyone has completely changed and turned their life around and deserves a second chance I would vote Eric Hicks, even before myself."); App. 629 (describing how Hicks

volunteered to teach a GED tutoring program "on his days off of work").

The District Court's opinion fails to mention any of this evidence. Nor did the court hold a hearing on Appellants' motions for relief. We therefore have no indication that the court considered the extensive mitigation arguments presented by Appellants.

## 5. *Remand to the District Court*

The District Court misunderstood the legal requirements governing review of motions for reduced sentences under section 404(b) of the First Step Act. In addition, the record is unclear whether the court took account of *all* factors that are relevant to Appellants' motions for reduced sentences. Therefore, we are constrained to reverse the judgement of the District Court and remand for new proceedings.

The District Court held that even though Appellants were "eligible" for relief under section 404(a), relief was not "available" under section 404(b), except as to Hicks's sentence for Count 11. *White*, 413 F. Supp. 3d at 48-51. The court determined relief was "available" as to Count 11 because, using judge-found drug quantities, the statutory penalties for that count would have been modified by section 2 of the Fair Sentencing Act. *See id.* at 51. As explained above, section 404(b) contains no "availability" requirement. Relief may be awarded to defendants so long as their offenses are "covered" under section 404(a) and neither of the limitations in section 404(c) apply. The District Court therefore erred as a matter of law in its judgment.

The District Court also erred in weighing Appellants' claims because the court referenced only judge-found drug

quantities and failed to mention the jury-found drug quantities. *White*, 413 F. Supp. 3d at 51-52. Given the District Court's mistaken holdings regarding judge-found drug quantities and the "availability" of relief, it is unclear whether the court understood that jury-found drug quantities may properly be considered in weighing Appellants' requests for relief under section 404. On remand, the District Court may properly consider both judge-found and jury-found drug quantities as part of its exercise of discretion. *See Ware*, 964 F.3d 482 at 488-89 (holding that both judge- and jury-found quantities may be considered in exercising discretion under section 404(b)).

The parties agree that the District Court should give proper consideration to the sentencing factors outlined in 18 U.S.C. § 3553(a) in assessing Appellants' motions for reduced sentences. *See White*, 413 F. Supp. 3d at 49; Br. for Appellants at 47-48; Br. for Appellee at 31. We agree that the court must do this on remand.

The District Court's opinion makes no reference to the extensive mitigating evidence offered by Appellants. *Compare White*, 413 F. Supp. 3d at 51-52, *with* App. 375-80, 383-418, 477-81, 601-05, 608-36, 689-90. And the court did not hold a hearing on Appellants' motion for relief, *see* App. 84, so we have no hearing transcript to consult. Because we cannot determine whether the District Court gave any consideration to the mitigating evidence presented by Appellants, the case must be remanded. *See Shaw*, 957 F.3d at 740-42 (remanding because district court did not provide sufficient explanation for its alternative holding to deny discretionary relief, where opinion did not address evidence of post-sentencing conduct and no hearing transcript was available); *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) (explaining that "evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors"); *Chambers*, 956

F.3d at 674; *United States v. Allen*, 956 F.3d 355, 357 (6th Cir. 2020).

The District Court must also base its determinations on accurate factual findings. The District Court's opinion appears to rely on clearly erroneous evidence in weighing Hicks's request for relief. *See Gall*, 552 U.S. at 51 (holding that reliance on a clearly erroneous factual finding at sentencing constitutes an abuse of discretion). The District Court's opinion states that Hicks's sentence enhancement for obstruction of justice was due to Hicks "bribing another First Street Crew member to withhold information from the grand jury that was investigating him [i.e., Hicks] for murder." *White*, 413 F. Supp. 3d at 52; *accord id.* at 25. It is unclear from the opinion whether the District Court mistakenly believed that Hicks was investigated for committing murder or instead for inappropriate involvement in a murder investigation. *See* Reply to Gov't's Opp'n to First Step Act Mot. 18 n.7, App. 688 ("[The] obstruction of justice enhancement was based on testimony from Michael Jackson that Mr. Hicks offered to provide him with cocaine and pay his rent if he did not disclose information to a grand jury investigating the murder of Gregory Jackson.").

Given the uncertain state of the record in this case, we are constrained to remand. *See Chavez-Meza*, 138 S. Ct. at 1965 ("If the court of appeals considers an explanation inadequate in a particular case, it can send the case back to the district court for a more complete explanation."). The District Court is required to give due consideration to all relevant factors in weighing Appellants' requests for relief under section 404. It is crucially important that this be done in cases arising under the First Step Act, a remedial statute that was enacted to rectify disproportionate and racially disparate sentencing penalties. Because we have no assurance that this happened in this case, we remand for further consideration.

### III. CONCLUSION

For the foregoing reasons, we reverse the District Court's order and remand the case so that the District Court may exercise its discretion under section 404 of the First Step Act as to both Appellants.